[No. 4951.]

THE CITY AND COUNTY OF DENVER v. FRUEAUFF.

1. Cities and Towns—City and County of Denver—Police Power —Ordinances—Gift Enterprise—Trading Stamps.

An ordinance forbidding any gift enterprise, and defining a gift enterprise to include the giving of any trading stamp or other device which entitles the purchaser of goods or other property to receive from any person or corporation other than the vendor any property other than that actually sold, is invalid, for the reason that it is not a proper exercise of the police power. —P. 32.

2. Constitutional Law—Lotteries or Gift Enterprises—What Constitutes—Trading Stamps.

Section 2, art. 18, Colo. const., and § 2927, Mills' Ann. Stats., prohibiting lotteries or gift enterprises, do not warrant an ordi-

nance prohibiting gift enterprises and defining a gift enterprise as including the giving of any trading stamps or other device which entitles the purchaser of goods or other property to receive from any person or corporation other than the vendor other property than that actually sold, since the term "gift enterprise," as used in the constitution and statute, is associated with the word "lottery," and involves, as that term does, the element of chance or hazard, and necessarily means that character of "enterprise" which appeals to the gambling instinct, and tends to debauch public morals, while the giving of trading stamps involves no such element of chance.—P. 37.

*Error to the County Court of the City and County of Denver.*

*Hon. Ben B. Lindsey, Judge.*

H. D. Frueauff was prosecuted for giving trading stamps to his customers in violation of an ordinance of the city and county of Denver. From a judgment discharging the defendant, the city and county of Denver brings error.          *Affirmed.*

Decision *en banc*, all the justices concurring.

Mr. H. A. LINDSLEY, Mr. MILTON SMITH, and Mr. D. L. WEBB, for plaintiff in error.

Mr. T. J. O'DONNELL and Mr. J. W. GRAHAM, Jr., for defendant in error.

The defendant in error, a merchant carrying on a legitimate business in the city of Denver, was charged with violating ordinance No. 62 of the series of 1904, entitled, "A bill for an ordinance to prohibit gift enterprises, defining the same, and providing penalties for the violations of said ordinance," which said ordinance is, in words and figures, as follows, to wit:

"Section 1.  It shall be unlawful for any person, persons, partnership, association or corporation to engage in, aid, abet, or patronize any 'Gift Enterprise,' as herein defined.

"Section 2.   A 'Gift Enterprise,' as herein employed, is defined to be and shall include the selling, giving, presenting or distributing of any stamp, trading stamp, coupon or other device which shall entitle the purchaser of property, goods, wares, or merchandise, to demand or receive from any person, persons, partnership, association or corporation other than the vendor, any article, property, goods, wares, merchandise or money other than that actually sold to the purchaser; or the delivery to any person, persons, partnership, association or corporation by any person, persons, partnership, association or corporation other than the vendor of any article, property, goods, wares, merchandise or money other than that actually sold, upon presentation of any such stamp, trading stamp, coupon or other device; or the issuing, selling, giving or distributing to any person, persons, partnership, association or corporation of any stamps, trading stamp, coupon, or other device by any person, persons, partnership, association or corporation engaged in any trade, business or profession, with the promise, expressed or implied, that he, they or it will give to the person presenting to him, them or it, such stamp, trading stamp, coupon or other device, any money or anything of value without receiving from such person the value thereof, or make to any such person, persons, partnership, association or corporation any concession or preference in any way on account of the presentation of such stamp, trading stamp, coupon, or other device; or the distributing or presenting by any person, persons, partnership, association or corporation engaged in any trade, business or profession to any person, persons, partnership, association or corporation dealing with him, them or it any such stamp, trading stamp, coupon or other device in consideration of any article or thing purchased of, or any service performed by, him,

them or it; or the selling or offering for sale of any real estate or article of merchandise of any description whatever, or any ticket of admission to any exhibition or performance or other place of amusement, with a promise, expressed or implied, to give or bestow or in any manner hold out the promise of the gift or bestowal of any article or thing for and in consideration of a purchase by any person, persons, partnership, association or corporation, of any other article or thing, whether the object shall be for individual gain or for any other purpose; and the term 'Gift Enterprise' shall also include the premium stamp, periodical ticket, trading stamp and similar schemes and devices wherein by means of stamps, checks, tickets or other device certain merchants, manufacturers and their customers are exploited.

"Section 3. Whoever shall violate any provision of this ordinance shall, for each offense, on conviction thereof in any court of competent jurisdiction, pay a fine of not less than one hundred dollars ($100), or more than three hundred dollars ($300), or be imprisoned in the common jail of the city and county of Denver for a term of not less than thirty (30) days, or more than ninety (90) days, or both such fine and imprisonment, in the discretion of the court."

The case was tried to the court upon an agreed statement of facts which, so far as necessary to a decision of the case, is as follows:

"2. That The Sperry & Hutchinson Company is a corporation organized under the law of the state of New Jersey, and doing business in the city and county of Denver, in the state of Colorado.

"3. That the defendant, at all of the times hereinafter mentioned, was, and now is, a resident of the city and county of Denver, and engaged in a mercantile business in the city and county of Denver, and

selling and disposing of goods, wares and merchandise at retail and otherwise, and is carrying on a large business.

"4. That heretofore the said The Sperry & Hutchinson Company and the said H. D. Frueauff entered into a memorandum of agreement which is, in words and figures, as follows, to wit:

## "MEMORANDUM OF AGREEMENT.

"This agreement, made the ..... day of ..... 190.., by and between The Sperry & Hutchinson Company, a corporation of the state of New Jersey (hereinafter called the Company), party of the first part, and ...... a ...... of ...... doing a general ....... business at ....... street, ....... state of ......., party of the second part, WITNESSETH:

"That, in consideration of the mutual promises and agreements hereinafter contained, said parties agree. as follows:

"Said Company agrees to advertise in the directory in its trading stamp books distributed in the city or town of ......, the name, business, and aforesaid business address of the party of the second part; to deliver to the people of said city or town said books, and explain to them how to use the same; to maintain a store for the purpose of redeeming its trading stamps when issued in the regular way by the party of the second part, and others duly authorized to issue the same; to keep on exhibition in said store goods and merchandise with which to redeem said stamps when presented in said books in lots of nine hundred and ninety (990) stamps, and according to law, collected in the manner prescribed and subject to the conditions in said books, and to use its best endeavors to promote the cash sales and trade of the party of the second part.

"The party of the second part agrees to order and receive from said Company its green trading stamps in lots of not less than ..... pads per lot, each pad containing five thousand (5,000) stamps, and to pay upon delivery thereof the sum of ...... dollars per pad, for the use of said stamps as an advertising medium, and agrees to supply said stamps from the aforesaid business address as an inducement for cash trade to all persons who pay cash for purchases; to give out said stamps as follows, and not otherwise to dispose of the same without the prior consent in writing of said Company, viz.: To give to each customer one stamp for each and every ten cents represented in the retail price of merchandise, for which cash is paid by said customer.

"Said party of the second part also agrees to display signs furnished by said Company which read, 'We Give S. & H. Green Trading Stamps,' or otherwise, in the windows and other prominent places about its stores, and agrees not to procure said stamps in any way except direct from said Company, either during the term of this contract or at any time, and also agrees to mention favorably the use of said stamps in all newspaper and other advertisements published by or for it; and not to use any other coupons, trading stamps, or similar device during the term of this contract, and not to join in any combination of merchants for the purpose of discontinuing the use of said Company's trading stamps.

"It is mutually agreed between the parties hereto that the property in and title to said stamps and signs shall remain in the said Company, and shall not, in any event, pass to the party of the second part, or any other person, firm, or corporation, and that this agreement shall remain in force for one year from the date of its execution, and shall be consid-

ered renewed for an equal period from year to year, unless written notice to the contrary be given by either party to the other at least thirty (30) days prior to the yearly periods of expiration; and, provided such notice be given by said Company, said Company may thereafter omit from its directory and advertisements the name of the party of the second part.

"It is mutually understood and agreed that this contract is made for the benefit of the public as well as of the parties hereto, and subject to legislative restriction.

*     *     *     *     *     *     *

"That, in accordance with the provisions of said contract, the said H. D. Frueauff did order and receive from The Sperry & Hutchinson Company pad or pads of green trading stamps, each pad containing not less than five thousand (5,000) stamps, as in said contract provided, and has, for some months last past, and is now engaged in supplying and giving out to customers said green trading stamps, in the following manner, to wit: To each customer, one stamp for each and every ten cents represented in retail price of merchandise for which cash is paid by said customer, and that, on the 10th day of December, A. D. 1904, the said defendant was thus engaged and did give out green trading stamps to each customer who called for the same, one stamp for each and every ten cents represented in retail price of merchandise for which cash was paid, not only to one, but to numerous, customers of the said defendant's place of business on said day, and the said defendant has not disposed of the green trading stamps so purchased from said Sperry & Hutchinson Company in any other manner, and the said defendant has also displayed, and is now displaying, and did display, on the 10th day of December, A. D. 1904,

signs reading: 'We Give S. & H. Green Trading Stamps,' in the window and other prominent places about his store, and has not used any other coupons or trading stamps or similar device than those mentioned in said contract.

"That the property in and title to said stamps so purchased as aforesaid by the said defendant from The Sperry & Hutchinson Company has, at all times, remained and does now remain in the said Company, according to the terms of said contract.

"That prior to, at the time of, and since the making of the said contract, the said The Sperry & Hutchinson Company have distributed a book containing nine hundred and ninety (990) blank spaces, in which green trading stamps could be pasted, and containing a notice and explanation and other writing, said distribution being made in various homes, places of business and other places in and about the city and county of Denver. That the notice contained in the said book is as follows:

" 'This book and the trading stamps which are issued by the undersigned are so issued, and are received by you, pursuant to certain restrictions concerning their use contained in the written contracts made for your benefit between the undersigned and the merchants from whom you receive the same. Neither the books nor the stamps are sold to you or the merchant, the title thereto being expressly reserved in the undersigned. They are merely loaned to you. The only right which you acquire in said stamps is to paste them in books like this and present them to us for redemption. You must not dispose of them, or make any other use of them without our consent in writing. We will, in every case where application is made to the undersigned, give you permission to turn over your stamps to any other *bona fide* collector of "S. & H." green trading

stamps; but if the stamps or the books are transferred without our consent, we reserve the right to restrain their use by or take them from other parties. It is to your interest that you fill the book, and personally derive the benefit and advantage of exchanging it for your choice of the many useful and valuable articles supplied by us.

" 'These stamps, when received by you, must be pasted in the book, as that is a method we have adopted for the purpose of preventing their further use as an advertising medium.'

"That the explanation in said book is in words and figures as follows, to wit:

" 'The object of green trading stamps is to enable the merchants who give them to sell their goods for *cash* instead of upon credit. By paying cash, therefore, you will be entitled to green trading stamps, one stamp for each ten cents represented in a purchase—that is to say, the number of stamps you receive will be equal to the number of times "ten" is contained in the amount of your cash purchase.

" 'Thus, green trading stamps are a benefit to both buyer and seller. The merchant saves the inevitable losses through bad accounts. He gets his money promptly, is enabled to discount his bills, and, having the cash, can buy cheaper than upon credit.

" 'By paying cash you are equally benefited. You also can buy cheaper. You can also obtain a discount—in the way of green trading stamps—which may be taken to our store and exchanged for an endless variety of goods.

" 'By exerting just a little care in trading where green trading stamps are given, it takes but a short time to fill a book with them (33 pages, 30 stamps on a page). The result is that, with no greater expenditure for your needs—perhaps less—you gradually accumulate a great many things, useful and orna-

mental, which have cost you absolutely nothing, but which you otherwise would not have possessed unless you had paid cash for them.

" 'See back page of cover for partial list of goods given for green trading stamps.

" 'The better way for you to do is to call at our local branch store and see for yourself. Make all the inquiries you desire. We sell nothing—everything in our store is given in exchange for green trading stamps only. The attendants there have nothing to do but to show you goods and answer questions.'

"That one of said books is hereto attached, marked 'Exhibit A,' and made a part hereof, and is the same kind of a book as issued to John Jones, a customer of the said defendant, to whom stamps were given on the said 10th day of December, A. D. 1904."

On the fourth page of cover of book is the following:

"For many years we have made a study of the public's requirements. It is not necessary to say that we understand the importance of supplying you, as nearly as possible, with just what you desire. Nor to say that the immense quantity of goods purchased by us each year naturally places at our disposal the wares of the best manufacturers and designers in every part of the world. These facts you already understand. Be assured that, if you collect green trading stamps, you cannot fail to obtain something in exchange for them that will thoroughly satisfy you.

"It is hardly possible for us to enumerate, on this page, the entire line of goods which can be had in exchange for green trading stamps. Among them, however, are the following, viz.:

"Furniture, art squares, rugs, lace curtains, bookcases, vases, jardinieres, onyx tables, clocks, watches, opera glasses, china, cut glass, musical in-

struments, lamps, carving sets, knives, forks, spoons, anything and everything in silverware, etc., etc.

"Yours very respectfully,

"THE SPERRY & HUTCHINSON Co."

"That the stamps so ordered and received from The Sperry & Hutchinson Company by the defendant, and used and given to the said John Jones on the 10th day of December, A. D. 1904, have no value in themselves, and that neither the book nor the stamps are the property of the defendant, and the rights of the customer receiving such stamps are defined and restricted by the 'notice' on the inside of the cover of 'Exhibit A.'

"That the said customers of the defendant could not take said stamps to the said The Sperry & Hutchinson Company in lots of less than nine hundred and ninety (990), and then only when pasted in said books, and have them redeemed, and that they are only redeemable when nine hundred and ninety (990) have been received and pasted in said book, and that the said The Sperry & Hutchinson Company do not and will not redeem from the customers of the said defendant said green trading stamps or any of them unless nine hundred and ninety (990) are presented and are pasted in said book.

"That some of said books are never filled or presented for redemption.

"That the said stamps consist of gummed paper, about the size of a postage stamp, the face bearing the name of said company and also the words, 'Green Trading Stamp.' Samples of said stamps are hereto attached and made a part hereof.

"That the said The Sperry & Hutchinson Company maintains a store at 1630 Stout street, in the city and county of Denver, where various articles of merchandise are exhibited and kept. That said articles of merchandise are marked 'One book,' 'Two

books,' or any other number as the case may be, which means that said article is given in redemption for the number of books marked upon the tag fastened to said article of merchandise, and the customer has an option or right of selection among said articles, when books of stamps are presented for redemption.

"That said contracts between The Sperry & Hutchinson Company are only made with a limited number of merchants in the same class or line of business; that is to say, stamps are not ordered or used by all of the merchants engaged in any particular class of business, but only certain ones so engaged therein, with whom the said The Sperry & Hutchinson Company elect to contract.

"That the said stamps are given to merchants contracting with the said The Sperry & Hutchinson Company, at the price agreed upon by contract, this price being almost without exception four and seventy-five hundredths dollars ($4.75) per thousand, in thousand lots, and four dollars ($4.00) per thousand in lots of fifteen thousand (15,000).

"That the said The Sperry & Hutchinson Company do not sell said articles of merchandise or premiums kept in their said store for cash or on credit, but they are only disposed of in redemption of said green trading stamps.

"5. That, on the 10th day of December, A. D. 1904, and succeeding days thereafter, and until the present time, the said contract between The Sperry & Hutchinson Company and the said defendant was in full force, and the said defendant had on hand a large number of stamps purchased under the provisions of said contract from said Sperry & Hutchinson, and, on said dates, gave and disposed of a large number of stamps to its patrons and customers, and among them to John Jones, on the said 10th day of December, A. D. 1904, and the said John Jones had

in his possession one of said books in which stamps given to him by the defendant were pasted, and on said dates the said defendant was conducting his business and giving away trading stamps, and the said The Sperry & Hutchinson Company were redeeming said stamps and carrying on their business in the manner and way hereinbefore set forth.

"That The Sperry & Hutchinson Company maintains stores and carries on its business in the same manner as hereinbefore set forth in other cities and states of the United States, and that stamps issued in Denver are redeemable at any store of said Sperry & Hutchinson Company at any place where it carries on said business, and that stamps issued at any other of the places where it carries on business are redeemable here under like terms as stamps issued here."

The county court adjudged that the ordinance "violates the constitution of the state of Colorado and of the United States, and is absolutely void and of no effect," and defendant was discharged. To this judgment the city and county of Denver prosecutes this writ of error.

Mr. JUSTICE GODDARD delivered the opinion of the court:

The question presented by this record has been considered by several of the ablest courts in this country, and has, with few exceptions, been determined adversely to the contention of the plaintiff in error. Not only has the character of legislation embodied in the ordinance in question been generally condemned, but the particular business aimed at therein has been held immune from interference under the police power of the state or municipality. The proposition announced in these cases is, that legislation which purports to have been enacted to protect the public health, public morals, and public safety, and which

has no real or substantial relation to those objects, is a palpable invasion of the rights guaranteed to individuals by the federal and state constitutions; that the legislature may not arbitrarily interfere with private business and impose unnecessary restrictions upon lawful occupations under the guise of protecting the public interests; and that its determination as to what is within its police power is subject to the supervision of the courts.—*Lawton v. Steele,* 152 U. S. 133, 137; *Winston v. Beeson,* 135 N. C. 271; *Madden v. Dycker,* 72 Hun. 308, 317; *State v. Dodge,* 76 Vt. 197; *Young v. Commonwealth of Va.,* 45 S. E. Rep. 327; *Long v. State,* 74 Md. 565; *State v. Dalton,* 22 R. I. 77; *State v. Shugart,* 138 Ala. 86; *Commonwealth v. Sisson,* 178 Mass. 578; *Hewin v. City of Atlanta,* 49 S. E. Rep. 765; *State v. Ramseyer,* 58 Atl. Rep. 958.

In *State v. Dalton,* the court had under consideration a statute which, like the ordinance before us, prohibited the use of trading stamps, and the violation of the statute upon which the prosecution was predicated was for giving and distributing with certain merchandise sold the same kind of stamps issued and redeemable in the same manner and by the same parties, to wit, The Sperry & Hutchinson Company, named in this case. In that case, after discussing the police power, and citing numerous authorities, the court concluded that the statute before it did not fall within the police power of the legislature, and was clearly an unlawful interference with a private right, because it did not look to, or in any manner concern, the public health, public safety, or the public morals, and said:

"In this connection it is pertinent to observe that it is not enough to warrant the state in prohibiting a given business that it is conducted by methods which do not meet with general approval. There must be

something in the methods employed which renders it injurious to the public in some one of the ways before mentioned in order to warrant the state in interfering therewith. Nor is it enough to bring a given business within the prohibitory power of the state that it is so conducted as to seriously interfere with or even destroy the business of others."

After discussing the question whether the transaction there under consideration involved any element of lottery, and the method of carrying on the business which the act prohibited, the court concluded: "The element of chance, which is the basal principle in every scheme in the nature of a lottery, is wholly wanting."

And, in speaking of the act there in question, the learned writer of the opinion used this language:

"The act, as we construe it, prohibits a person from selling a given article, and at the same time, and as a part of the transaction, giving to the purchaser a stamp, coupon, or other device which will entitle him to receive from some third person some other well-defined article in addition to the one sold. This is equivalent to declaring that it is illegal for a man to give away one article as a premium to the buyer for having purchased another. * * * We think it is clear that such a prohibition is an unwarranted interference with the individual liberty which is guaranteed to every citizen, both by our state constitution and also by the fourteenth amendment to the constitution of the United States."

And, in finally summing up, he says:

"What we do decide is, that the statute in question is so broad as to interfere with the right of an individual to deal with his own property in his own way; that is to say, to make such contracts regarding the sale and disposition thereof as he shall see fit, so long as he observes the rule that each one shall

so use and enjoy his own property as not to injure that of another person, and also the further rule that his use of it shall not be injurious to the community; and hence is not a valid exercise of the legislative power.''

In *Young v. Commonwealth,* a similar statute which inhibited the same transaction complained of here, was considered. Harrison, J., after speaking in detail as to the manner in which the business of The Sperry & Hutchinson Company was conducted, said:

''We can find nothing in the contract between The Sperry & Hutchinson Company and the defendant, nor the transactions with customers in pursuance of such contract, that is not a legitimate exercise of one's right to prosecute his business in his own way. As already said, 'It appears to be simply one of the many devices fallen upon in these days of sharp competition between tradespeople' to attract customers, or to induce those who have bought once to buy again, and in this respect is as innocent as any other of the many forms of advertising.''

In *Winston v. Beeson,* the court had under consideration the question as to whether dealers in trading stamps came within the provisions of an ordinance taxing gift enterprises, the business there under consideration being that of The Sperry & Hutchinson Company; in other words, whether their business, in the manner in which it was conducted, constituted a gift enterprise in the sense that those words were used in the charter. After an able and elaborate discussion as to what was meant by the term ''gift enterprise,'' and concluding that, as generally defined and understood, it constituted ''a scheme for the division and distribution of certain articles of property to be determined by chance among those who have taken shares in the scheme,'' citing Black's Law Dictionary, p. 539; Bouvier's Law

Dictionary, vol. 1, p. 884; Anderson's Law Diction-
ary, p. 488, and *Lohman v. State,* 81 Ind. 17, as ap-
proving that definition, the court, speaking by Walk-
er, J., said:

"From the definitions we have already given of
a lottery or scheme for the disposition or distribu-
tion of prizes or property by chance, it appears that
three things must concur in order to constitute it:
(1) There must be the purchase of a right; (2) the
right must be a contingent one, to receive something
greater than that which is purchased; and (3) the
contingent right must depend upon a lot or chance.
We have not been able to discover any one of these
elements in the plan devised by the defendant com-
pany for the conduct of its business. The right to
have the stamps redeemed depends upon no con-
tingency, chance or lot whatsoever; the person re-
ceiving the stamps upon the purchase of goods is not
in any degree deprived of his choice or will. Indeed,
by the contract, he is given full and free exercise of
his choice and will. The right of selection among the
articles kept by the stamp company in its store is
expressly given, and the stamp collector may choose
the best or the most valuable or such a one as may be
most useful to him or pleasing to his taste, as he may
be minded. The articles are all publicly exhibited,
and, before the purchases are made or the stamps
collected, any person proposing to buy and to receive
the stamps from the merchant has free access to the
store, where he may see and examine the goods from
which his selection may be made. There is, there-
fore, no uncertainty as to the nature, character or
value of the premium, if we may so call it, with
which the stamps will be redeemed. The fact that the
stamps are redeemed at a place other than the one
where they are issued certainly does not introduce
into the scheme any element of chance. We can dis-

cern no practical difference between this arrange-- ment of the parties and one by which the merchant agrees to discount his bills where cash is paid by his customer at the time of the purchase, and the giving of stamps redeemable at a store of another in goods to be selected by the holder, instead of an actual discount by the merchant, does not in law vary the case or change the real and substantial character of the transaction. The plan, as outlined in the verdict (being the same as set out in the statement of facts in this case) seems to be one for advertising the merchant's business and his wares, and enabling him to sell his goods for cash instead of on time. This, it must be conceded, is an advantage to him. It is also a benefit to the customer, who practically re-- ceives a discount, and who will buy more cautiously and judiciously if he pays cash, and will spend only according to his means.''

We quote thus fully from the opinion of the learned judge in that case because it is a fair, lucid and correct statement of the trading stamp business as conducted by The Sperry & Hutchinson Company, as it is set out in the agreed statement of facts in this case, and gives a clear understanding of the character of the business sought to be inhibited by the ordi- nance before us, and shows that the element of chance is wholly lacking.

Counsel for plaintiff in error attempt to distinguish the case before us from the foregoing cases upon the ground that our constitution provides: ''The general assembly shall have no power to authorize lotteries or gift enterprises for any purpose, and shall pass laws to prohibit the sale of lottery or gift enterprise tickets in this state.''—Const., art. 18, sec. 2. And section 2927, Mills' Ann. Stats., enacts that: ''It shall not be lawful hereafter for any person, persons, association of persons, or corporation,.

to engage in or otherwise promote any lottery or gift enterprise of any nature, or for any purpose whatsoever,'' and making it a misdemeanor to knowingly engage in, or in any wise promote, any lottery or gift enterprise.

It is contended that these provisions are broad enough to include ''gift enterprises'' of any nature, whether they involve the element of chance or not, and, therefore, justify the adoption of the ordinance in dispute. We do not think the term ''gift enterprise,'' as used in the foregoing provisions, is susceptible of this construction. Associated as these words are in both constitution and statute with the word ''lottery,'' they involve, as that term does, the element of chance or hazard, and necessarily mean that character of ''enterprises'' which appeals to the gambling instinct, and tends to debauch public morals. This being so, there is no warrant for saying that the transaction sought to be prohibited by the ordinance under consideration comes within the category of ''gift enterprises'' contemplated by the constitution or statute; and it is equally clear that the city council cannot, by arbitrarily defining the business of the trading stamp company as such, bring it within the class of inhibited enterprises, and under the guise of the exercise of its police power, prohibit the carrying on of that which we have seen is a legitimate business.

The case of *Lansburgh v. Dist. of Columbia*, 11 Appeal Cases 512, is relied on by plaintiff in error as authorizing the legislation in question. While it is true that the decision in that case is ostensibly predicated upon the fact that the statute there considered furnished a definition of a ''gift enterprise,'' and that it was, therefore, unnecessary to declare that the acts proved in the case constituted a lottery or gift enterprise, as those words were commonly used,

or that the element of chance operated intentionally or directly in the scheme of the trading stamp company, which was the same as that herein set forth, yet it will be seen that, in his reasoning, the writer of the opinion laid great stress upon the fact that the scheme there involved, according to his notion, was "the exploitation of nothing more or less than a cunning device," and "one of the most shrewdly planned of the many devices to obtain something for nothing"; that they (the trading company) had "intervened in the legitimate business carried on in the District of Columbia between seller and buyer, not for the advantage of either, but to prey upon both," evidently regarding the scheme in itself as inimical to public morals and detrimental to the public welfare; and, while disclaiming the necessity of undertaking to specify the particular conditions in which the act under consideration might or might not apply to actual merchants in the ordinary course of competitive business, or to determine just what character of inducements by way of gift or premium may or may not be held out to purchasers at the time and as a part of their purchase, used this significant language:

"That it was not intended to apply to ordinary discounts for cash, or in proportion to amounts of purchases when made by the merchant himself to his customers, may be regarded as certain; and the exercise of such power would doubtless be denied if expressly attempted. Nor can it, with reason, be said to apply to *bona fide* co-operative associations and the like. It is possible, also, that it might not be operative in a case where the sale of a lawful article is accompanied by a gift of something specific and certain, not attended with any element of chance, and where the gift is not the real object of the sale."

It is apparent that the learned judge was of the

opinion that the statute would be inoperative if it intended to apply to, and include within its definition of "gift enterprises" a transaction involving the sale of a lawful article accompanied by a gift of something specific and certain, not accompanied by the element of chance. In other words, it is very probable that, if he had taken the same view of the business carried on by the trading stamp company as was adopted in all of the cases above cited, wherein the same transaction was investigated, his conclusion would have been in accord with that reached in those cases.

If the decision in that case is to be construed as announcing the doctrine that a legislative declaration that a business, lawful in itself, is a "gift enterprise," and is thereby rendered unlawful, regardless of the fact that it wholly lacks the essential element of chance, it is at variance with the uniform current of authority; and if, as we understand it, the conclusion therein reached was because the scheme under consideration was, in the opinion of the court, obnoxious to public morals or detrimental to the public welfare, we decline to follow it, because it is directly opposed to the conclusion reached as to its character in all the cases in which the business of the trading stamp company has been under investigation.

*Humes v. City of Ft. Smith,* 93 Fed. Rep. 857, is similar to, and follows, the *Lansburgh case.* We find no other case which, when carefully considered, supports the position assumed by plaintiff in error in this case. In the view we take of the scheme of the trading stamp company, as described in the agreed statement of facts, we are clearly of the opinion that the ordinance prohibiting it cannot be sustained, and the court below properly discharged the defendant, and its judgment will be affirmed.          *Affirmed.*

Decision *en banc,* all the justices concurring.