TERRITORY OF HAWAII *v.* M. A. GUNST AND COM-
PANY, A CORPORATION.

APPEAL FROM DISTRICT COURT, HONOLULU.

ARGUED JANUARY 2, 1907.          DECIDED JANUARY 14, 1907.

FREAR, C.J., HARTWELL AND WILDER, JJ.

TRADING STAMP STATUTE—*constitutionality.*

> Act 85 of the Session Laws of 1905, in so far as it prohibits a
> person from selling property on the representation and inducement
> that the purchaser shall have the right to select and receive some
> other property as a gift or premium, which is unselected and
> unidentified by him at or before the sale, and the issuance of trad
> ing stamps for that purpose, is unconstitutional and void.

OPINION OF THE COURT BY WILDER, J.

This is an appeal from the district court of Honolulu where
the defendant was charged with and found guilty of violating
Act 85 of the Session Laws of 1905 in selling two cigars for
25 cents to one Derby on a representation, advertisement, notice
and inducement that it would deliver to the purchaser a trad-
ing stamp and coupon entitling the purchaser to receive from
defendant some other property unselected and unidentified by
him at or before the time of the sale. The conviction was
proper, unless, as claimed by defendant, the statute was invalid
wholly or in part because contrary to either or both the fifth and
fourteenth amendments of the federal constitution.

At the time of the sale the purchaser received a 25-cent
premium certificate which, together with a certain number of
other certificates, entitled the holder to select and receive from
the defendant in exchange therefor an article of property desig-

nated by him from a large number set forth in a premium list which was also furnished the purchaser at the time of the sale. All of the articles described in the premium list were represented as being on exhibition at defendant's store in Honolulu. The defendant reserved the "right to withdraw any premium and to revise our list as trade conditions may demand. Our large and constantly increasing assortment will always permit of a satisfactory selection."

Our statute (Act 85, Laws of 1905), which is an exact copy of, and was approved a month or so after, the California statute, is as follows:

"Whoever sells or exchanges any property or offers or attempts so to do upon a representation, advertisement, notice or inducement that anything unidentified by or unselected by the purchaser at or before the time of the sale or exchange, or upon a representation, advertisement, notice or inducement that anything whose precise nature is not so known to the purchaser at the time of the sale or exchange as to be completely identified beyond the necessity of any further or other selection or upon a representation, notice, advertisement or inducement that any property whose selection will depend upon chance or hazard or in any manner whatsoever is or is to be delivered or received, or is in any way connected with or is a part of the transaction as a prize, premium or premium-gift; or whoever sells or exchanges any property or offers or attempts so to do upon a representation, advertisement, notice or inducement that a stamp, trading stamp, coupon or other device which entitles the purchaser to demand or receive either from the vendor or from any other person, company, association or corporation any other property unselected by or unidentified by the purchaser at or before the time of the said sale or exchange, or which entitles the purchaser to demand or receive either from the vendor or from any other person, corporation, association or company anything whose precise nature is not so known to the purchaser at the time of the said sale or exchange as to be completely identified beyond the necessity of any further or other selection, or which entitles the purchaser to receive or demand either from the vendor or from any other person, corporation, association or company any property whose selection will depend upon chance or hazard in any manner whatsoever, is to be delivered

or received or is in any way connected with or is a part of the
transaction as a prize, premium or premium-gift, or whoever
sells or exchanges any trading stamp, stamp, coupon or other
like device upon a contract to enable the purchaser to sell or
exchange property, or attempt so to do, upon any representa-
tion, advertisement, notice or inducement of any kind herein-
before mentioned; or whoever delivers any goods, wares or mer-
chandise upon the presentation of any such stamp, coupon or
other like device so given or caused to be given, shall for each
offence be guilty of a misdemeanor and be punishable by a fine
of not less than Twenty Dollars, or more than Five Hundred
Dollars, provided, however, that the provisions of this Act
shall not apply or extend in any manner to the redemption, of
any such stamp, trading stamp, coupon or other like device that
may have been issued as a premium, prize, or premium-gift
prior to the time this Act takes effect; and provided further,
that the provisions of this Act shall not apply or extend to any
sale or exchange of articles in bulk, heap or mass, or a part or
portion thereof, which sale or exchange is not made, effected or
induced by or upon any representation, advertisement, notice
or inducement of any kind hereinbefore specified."

The fifth amendment of the constitution provides that no
person shall be deprived of life, liberty or property without due
process of law. The liberty referred to means more than mere
freedom from restraint. "It means not merely the right to go
where one chooses, but to do such acts as he may judge best
for his interest, not inconsistent with the equal rights of others;
that is, to follow such pursuits as may be best adapted to his
faculties and which will give him the highest enjoyment. The
liberty mentioned is deemed to embrace the right of the citizen
to be free in the enjoyment of all his faculties; to be free to use
them in all lawful ways; to live and work where he will; to
earn his livelihood by any lawful calling, and for that purpose
to enter into all contracts which may be proper, necessary, and
essential to his carrying out to a successful conclusion the pur-
pose above mentioned." *Young v. Com.*, 45 S. E. (Va.) 328.
It is the duty of the court to set aside any attempt of the legis-
lature to infringe upon this liberty. It was said in *Lawton v.
Steele*, 152 U. S. 137:

"To justify the state in thus interposing its authority in behalf of the public, it must appear, first, that the interests of the public generally, as distinguished from those of a particular class, require such interference; and, second, that the means are reasonably necessary for the accomplishment of the purpose, and not unduly oppressive upon individuals. The legislature may not, under the guise of protecting the public interests, arbitrarily interfere with private business, or impose unusual and unnecessary restrictions upon lawful occupations."

See also *Mugler v. Kansas*, 123 U. S. 661, where it was said:

"The courts are not bound by mere forms, nor are they to be misled by mere pretenses. They are at liberty—indeed, are under a solemn duty—to look at the substance of things, whenever they enter upon the inquiry whether the legislature has transcended the limits of its authority. If, therefore, a statute purporting to have been enacted to protect the public health, the public morals, or the public safety, has no real or substantial relation to those objects, or is a palpable invasion of rights secured by the fundamental law, it is the duty of the courts to so adjudge, and thereby give effect to the Constitution."

The scheme carried on by defendant is a form of advertising. It is intended to attract new and retain old customers on the theory of making them believe that they are getting something for nothing. In reality, a concern can well afford to give away these premiums by virtue of the additional profits made by the larger sales. In this case the defendant had the undoubted right to sell the two cigars in question. To deny that it also had the right to give the purchaser some other property in addition which he could select would be to deny its right to do business at all.

The legality of transactions of this kind has been before the courts frequently in the past few years, and has been so well considered by them that it will suffice to refer to the reasoning in some of the decided cases.

The first case to which attention is directed is that of *Ex Parte Drexell*, 147 Cal. 763, where the statute was identical with our own. The court said:

"The general character of trading stamps or coupons is a matter of common knowledge. They are somewhat different in form; and one in common use is substantially this: Each time a customer purchases goods from a merchant and pays for them in cash, the merchant gives him a memorandum in writing—called a stamp or coupon—which expresses in money value a small percentage of the price of the goods bought and paid for, and entitles him, after he has accumulated a certain number of such coupons, to use them, to the extent of their face value, in payment for any other goods of the merchant which he may afterwards desire—or goods of some other person or trading company who has undertaken to redeem the coupons. There is generally issued with the stamp or coupon a catalogue of articles from which the holder of the coupon may afterwards select; and such, as we understand it, was the fact in the cases at bar. And such a stamp or coupon, whether or not accompanied by such a catalogue, is prohibited by the act in question. * * * We see nothing in such a stamp or coupon which is outside of the constitutional rights of citizens to make contracts concerning property; nothing which wrongfully interferes with the lawful rights of other persons; and nothing which the police power can reach as touching the public safety, the public health, or the public morals. Of course, contracts containing lotteries, advantages dependent upon chance, or any kind of gambling scheme, may be regulated or suppressed. But a trading coupon has none of these characteristics; it is not a lottery; its redemption does not depend upon chance, and it has no element of gambling of any kind. Its holder selects what goods he wants; he is not compelled to take what chance may give him, or to get nothing if the throw of the dice. or the event of some other gambling device, shall so determine. It is, therefore, a contract which, under the principles above stated, the legislature has no constitutional power to prohibit, or to seriously interfere with under the guise of regulation; and as the act in question undertakes to do this, it is unconstitutional and void. * * * The statute in question here makes it a misdemeanor to issue a trading stamp or coupon for 'anything unidentified or unselected by the purchaser at or before the time of the sale,' and which at the time of the sale shall not be 'completely identified beyond the necessity of any further or other selection;' and it is contended by respondent that this feature of the statute takes it

out of the principle declared in many of the authorities above cited. We do not see any merit in this contention. There is still no element of chance or gambling in the transaction, whether the purchaser is allowed to make his selection when he is ready to do so, or whether he be compelled at the time of the purchase to then and there limit his choice to some one article, which he might not want when in future he has accumulated sufficient coupons to be used. Usually a list of articles from which a selection may be made accompanies the coupon; but whether so or not, he is in either event forced by the statute to make his selection at the time he receives his first coupon. This requirement destroys in a great measure the efficiency of the system, and has no relation whatever to the protection of the public safety, the public health, or the public morals. * * * We see no force in the contention that the act is proper as protecting the holders of trading stamps from the fraud and deceit of those who issue them. Of course, the value of any contract depends upon the good faith of each contracting party; and the contracts evidenced by trading stamps are no more subject to the failures of those issuing them to comply with their promises than are any other valid contracts. Such failures would soon end the business. The act in question has a clause prohibiting the coupon when the selection of the property 'will depend upon chance or hazard in any manner whatever;' but this clause need not be here considered, because there is no averment in the complaint, nor is it claimed, that there is here any chance or hazard involved, unless the general nature of the business of issuing trading stamps inherently includes chance or hazard; and, as we have before stated, it does not. Indeed, an ordinary trading stamp or coupon is in substance a mere form of allowing discounts on cash payments, and its issuance is entirely harmless and within the constitutional right of contract. It may be distasteful to certain competitors in business; but the latter should remember that if a statute suppressing it be upheld, then other oppressive statutes might be enacted unlawfully interfering with and hampering business and the right of contract to which these competitors would strongly but vainly object."

In *People v. Gillson*, 109 N. Y. 389, a statute prohibiting any person who sells, exchanges or disposes of any article of food from offering to give or giving some other article as a

gift, prize, premium or reward to the purchaser was held uncon-
stitutional and void.  The court said:

"It is quite clear that some or all of these fundamental and
valuable rights are invaded, weakened, limited, or destroyed by
the legislation under consideration.  It is evidently of that kind
which has been so frequent of late—a kind which is meant to
protect some class in the community against the fair, free and
full competition of some other class, the members of the former
class thinking it impossible to hold their own against such com-
petition, and therefore flying to the legislature to secure some
enactment which shall operate favorably to them or unfavorably
to their competitors in the commercial, agricultural, manufac-
turing or producing fields.  By the provisions of this act a
man owning articles of food which he wishes to sell or dispose
of is limited in his powers of sale or disposition.  A liberty to
adopt or follow for a livelihood a lawful industrial pursuit and
in a manner not injurious to the community, is certainly
infringed upon, limited, perhaps weakened or destroyed, by
such legislation.  It is certainly lawful to sell (as in this
instance) coffee.  It is an article of food, and is now almost
one of the necessaries of life to a large number of people.  A
person engaged as a retailer of coffee might very well think that
he could greatly enlarge the amount of his trade by doing pre-
cisely what was done by the defendant in this case, and that
while his profits on the same amount of coffee sold would be
smaller than if he gave no present, yet by the growth of his
trade his income at the end of the year would be more than by
the old method.  This statute, if valid, steps in to prevent his
adopting such a course to procure trade, and from it to secure
an income and livelihood for himself and family.  He is thus
restrained in the free enjoyment of his faculties which he ought
to have the right and liberty to use in the way of creating or
adopting plans for the increase and growth of his trade, busi-
ness or occupation, unless such restraint is necessary for the
common welfare.  This law interferes with the free sale of
food; for the condition is imposed that no one shall sell food,
and at the same time, and as part of the transaction, give away
any other thing.  * * *  The learned counsel for the plaintiff
claims that the act is a valid exercise of the police power, in
furtherance of the policy of the state to prohibit the setting up
of lotteries and the sale of lottery tickets.  A careful reading

of the statute fails to show any such purpose. It prohibits the seller of food from giving away any other thing as part of the transaction of sale, and as an inducement leading to it. It says nothing as to any lottery, and does not confine its prohibition to the giving away or distribution of any other article of property by virtue of any scheme founded upon chance. The act, in effect, absolutely prohibits the giving away of any other thing with the food sold and as part of the transaction of sale, wholly regardless of the means used to effect the giving away or delivery of such other article. The proof in this case shows there was no lottery or pretense of lottery in the transaction upon which defendant was convicted of a violation of the act. There was not the slightest element of chance in the case. A counter had upon it various articles of crockery, all of which were in full view of the purchaser at the time he purchased the coffee in question. He was told that he could have any of those articles on that counter, to be picked out by himself, if he purchased two pounds of the coffee mentioned. To call such a transaction a lottery, or the checks given with the coffee a sale of lottery tickets, is to wholly ignore the true nature and character of a lottery, and also of this transaction. In this scheme the purchaser not only gets what he pays for, but by the very terms of the contract he has no chance to obtain anything more. In the purchase of two pounds of coffee he purchases the right to choose a certain article of crockery from a counter in full view, and he gets no chance to obtain anything else. In all cases cited by the counsel in his very elaborate and painstaking brief not one case is found where it has been held that a lottery or anything in the nature of a lottery existed, unless there was added to the right to obtain some kind of property, in any event, the chance, near or remote, of getting something in addition to it, of more or less value as the case might be. Here there is no chance, and consequently nothing in the nature of a lottery, and the act cannot be upheld on the theory mentioned."

In *State v. Dalton,* 22 R. I. 77, it was held that the giving of a premium by a vendor of property to purchasers as an inducement for them to trade with him is a legitimate method of doing business which the state has not the power to prohibit. The court said:

"It was certainly within the constitutional right of the defendant in this case to sell tobacco—it being presumed, of course, that he had obtained the necessary authority to deal in that article—and, as an inducement to people to trade with him, it was also his right to give to each purchaser of a certain quantity of tobacco, either directly or through a third person, some other designated article of value by way of premium. The statute in question, however, steps in to prevent him from such a course to procure trade, and from it to secure an income and livelihood, and he is thus restrained in the free enjoyment of his faculties to which he is constitutionally entitled, unless such restraint is necessary for the common welfare in one of the ways heretofore mentioned, and we cannot see that it is. In other words, the statute says that A shall not sell to B a barrel of flour and, in connection with and as a part of the contract of sale, give to B a coupon which will entitle him to receive from C a pound of tea, a pitcher, a lamp, a clock, a door mat, or some other specified article of merchandise. If the act had prohibited the giving away of any stamp or device, in connection with the sale of an article which would entitle the holder to receive, either directly from the vendor or indirectly through another person, some indefinite and undescribed article, the nature and value of which were unknown to the purchaser, there would then be introduced into the prohibited transaction enough of the element of uncertainty and chance to condemn it as being in the nature of a lottery. But it is further argued in support of the statute that the scheme aimed at is one which is demoralizing to legitimate business, and hence within the police power of the state to prohibit. * * * In this connection it is pertinent to observe that it is not enough to warrant the state in absolutely prohibiting a given business that it is conducted by methods which do not meet with general approval. There must be something in the methods employed which renders it injurious to the public in some one of the ways before mentioned in order to warrant the state in interfering therewith. Nor is it enough to bring a given business within the prohibitory power of the state that it is so conducted as to seriously interfere with or even destroy the business of others. Take, for illustration, the great department stores in our large cities. By reason of the almost infinite variety of goods which they carry they furnish greater facilities to customers and can

offer them greater inducements in the way of trade than can those stores which carry but a single line of goods. The result is, as everybody knows, that very many small traders have been crushed out and have been obliged to abandon their business entirely while the owners of the mammoth establishments which supply almost everything which we eat, drink, wear, use, need or desire, whether useful or ornamental, are prosperous and successful in a remarkable degree. But while the result of this method of doing business is injurious to those who employ the more primitive one, can it be said that a law prohibiting a department store would be a valid exercise of the police power? Clearly not. * * * It may be demoralizing to legitimate business for two great rival dry goods houses to cut prices in the attempt to undersell each other or for two competing railway lines to sell tickets at half price in the attempt of each to get an advantage over the other; yet probably no one would claim that such competition could be prohibited by law. 'Bargain sales' and 'bargain counters' may be demoralizing to business, but probably no one would claim that they can be abolished by law."

Other cases holding or tending to hold the same way are *Young v. Com.,* 45 S. E. (Va.) 327; *State v. Dodge,* 56 Atl. (Vt.) 983; *State v. Ramseyer,* 58 Atl. (N. H.) 958; *Hewin v. City of Atlanta,* 49 S. E. (Ga.) 767; *Com. v. Sisson,* 178 Mass. 578; *Montgomery v. Kelley,* 38 So. (Ala.) 67; *State v. Shugart,* 35 So. (Ala.) 28; *Winston v. Hudson,* 135 N. C. 271; *Ex Parte Hutchinson,* 137 Fed. 949; *Humes v. Little Rock,* 138 Fed. 929.

Four cases are cited as holding a contrary view. They are *Lansburgh v. District of Columbia,* 11 App. D. C. 512 (56 Albany Law Journal 488); *Humes v. Smith,* 93 Fed. 857; *State v. Hawkins,* 51 Atl. (Md.) 850; *Fleetwood v. Reed,* 21 Wash. 547. The Maryland case does not go as far as is claimed by the prosecution. It held that if on a sale of goods a trading stamp is given entitling the purchaser to something else which is uncertain, indeterminate and unknown to him the transaction involves the element of chance and the statute prohibiting the giving of such stamp is not unconstitutional.

The same line of reasoning would condemn the statute in this case so far as the particular tansaction involved is concerned. The other three cases are perhaps also distinguishable, but if not we decline to follow them.

The conclusion is that Act 85 of the Session Laws of 1905, in so far as it attempts to prohibit transactions of the kind involved in this case, is contrary to the fifth amendment of the Constitution of the United States and void.

The judgment appealed from is reversed and the defendant discharged.

*M. F. Prosser, Depuly Allorney General,* and *C. F. Clemons,* (*Thompson & Clemons* also on the brief), for the Territory.

*S. H. Derby,* (*Kinney, McClanahan & Derby* on the brief), for defendant.