## TUMLIN BROTHERS CO. *v.* DANIEL BROTHERS CO.

Under the facts of this case, the contract entered into between the plaintiff and the defendant can be carried out by both parties without violating the provisions of the Penal Code, § 404, declaring:  "It shall be a misdemeanor for any person, firm, or corporation to issue or give away, in connection with the sale of any article of goods, wares, or merchandise, any stamp, commonly called a trading-stamp, or other like device, which said stamp or other like device would entitle the holder thereof to receive, from some other person or party than the vendor, any indefinite or undescribed thing, the nature or value of which was unknown to the purchaser at the time of the purchase of said article of goods, wares, or merchandise."  The trial judge properly refused the grant of an interlocutory injunction.

APRIL 23, 1914.

Petition for injunction.  Before Judge Pendleton.  Fulton superior court.  December 19, 1913.

Daniel Brothers Company, a corporation, was engaged in the

business of men's furnishings, clothes, shoes, hats, etc., in the retail district of the City of Atlanta. In order to extend its business and attract trade, it began recently to issue a system of coupons, certificates, and bonds to customers who paid cash for purchases, such coupons and certificates being issued in a fixed and certain proportion to the amount of cash paid on a purchase. The certificates were redeemable in various articles or premiums kept and exhibited at the store of Daniel Brothers Co., and embraced a large number of ornaments and useful articles which were described, not only in words but pictorially, in an extensive eighty-page catalog which was fully indexed, the number of certificates required to procure each of the premium articles being also stated. Tumlin Brothers Co., also a corporation, entered into a contract with Daniel Brothers Co., whereby, among other things, Tumlin Brothers Co. agreed to issue similar coupons, certificates, and bonds redeemable at the store of Daniel Brothers Co. in the premium articles kept there on exhibition; Tumlin Brothers Co. having the right to keep samples of such articles at its store; Daniel Brothers Co. agreeing to print on all of its coupons, certificates, and bonds a statement that similar coupons, certificates, and bonds would be issued by Tumlin Brothers Co., the latter to pay to the former the actual cost price of the premiums delivered by Daniel Brothers Co. to the holders of certificates of Tumlin Brothers Co., neither party to make any profit out of the premiums themselves; Daniel Brothers Co. to profit by getting new customers and trade through people going to its store to redeem the certificates of Tumlin Brothers Co., and the latter to profit by the advertisement on the coupons, certificates, and bonds of Daniel Brothers Co. and the new trade derived therefrom. After the contract was entered into, the attention of Tumlin Brothers Co. was called to Penal Code § 404, which is as follows: "It shall be a misdemeanor for any person, firm, or corporation to issue or give away, in connection with the sale of any article of goods, wares, or merchandise, any stamp, commonly called a trading-stamp, or other like device, which said stamp or other like device would entitle the holder thereof to receive, from some other person or party than the vendor, any indefinite or undescribed thing, the nature or value of which was unknown to the purchaser at the time of the purchase of said article of goods, wares, or merchandise." Not desiring to violate the provisions of this law, Tum-

lin Brothers Co. demanded of Daniel Brothers Co. a cancellation of the contract. Daniel Brothers Co. declined to surrender, annul, or cancel the contract; whereupon Tumlin Brothers Co. brought its action against Daniel Brothers Co., to have the contract declared illegal, cancelled, and surrendered, and to enjoin Daniel Brothers Co. from enforcing the same, and for other relief. Upon the hearing, after the introduction of evidence showing the facts as above stated, and also that it was agreed between the parties that the catalogs issued by Daniel Brothers Co. would also be kept on hand by Tumlin Brothers Co. and distributed by it to the general public at each of its places of business in Atlanta, the court refused to grant an interlocutory injunction; to which ruling Tumlin Brothers Co. excepted.

*William A. Fuller,* for plaintiff.

*C. T. & L. C. Hopkins,* for defendant.

FISH, C. J. (After stating the foregoing facts.) Many, if not all, of the courts which have had under consideration the trading-stamp business have held not only that the business is legitimate, but that the right to engage in it without undue interference from States and municipalities is guaranteed by the constitution of the United States, to the same extent, and subject only to the same restrictions, that can be placed around a person engaged in any lawful business not within the range of the police power. *Hewin* v. *City of Atlanta,* 121 Ga. 723, 728 (49 S. E. 765, 67 L. R. A. 795, 2 Ann. Cas. 296), and cases cited. The legality, however, of the trading-stamp business was not involved in that case. Apparently to meet such decisions, the legislatures of some States passed acts more or less similar to the statute of this State embodied in the Penal Code, § 404, and quoted in the statement of facts preceding this opinion. Such acts did not flatly prohibit the issuing or using of trading-stamps or the like device, but included the superadded feature of indefiniteness or uncertainty as to the article for which the stamps were to be exchanged, thereby introducing into the transaction an element of chance and involving an appeal to the gambling instinct, or the suggestion to procure something by chance, and thus seeking to provide a basis for the statute under the police power of the State. A statute of the State of Maryland, enacted in 1886, provided: "that no person or body corporate shall be permitted, either directly or indirectly, by agent or otherwise, to barter,

sell, or trade, or to offer for barter, sale, or trade, by any publication, or in any way, any wares, goods, or merchandise of any description in package or bulk, holding out as an inducement for any such barter, sale, or trade . . any scheme or device by way of gift enterprises of any kind or character whatsoever." It was held, in Long v. State, 73 Md. 527 (21 Atl. 683, 12 L. R. A. 89, 25 Am. St. R. 606), that the statute, in so far as it related to gift enterprises not involving chance, was invalid and could not be enforced. In 1898 another act was passed in that State, condemning the giving or issuing of a stamp, etc., to be presented to some person or association of persons other than the vendor of the goods sold, which entitled the holder to get or receive, in exchange therefor, "any gift, prize, or gratuity, or anything uncertain, undetermined, or unknown to the purchaser of said goods, wares, or merchandise at the time of the purchase thereof." In State v. Hawkins, 95 Md. 133 (51 Atl. 850, 93 Am. St. 328), it was held, that if on the sale or purchase of goods a trading-stamp is given, entitling the purchaser to something which is uncertain, indeterminate, and then unknown to him, the transaction involves the element of chance, and the statute prohibiting the giving of such stamp is not unconstitutional. It was also held that a statute prohibiting the redeeming of a trading-stamp at a place other than that where or by a person other than him by whom the sale was made is unconstitutional, because the place where and the person by whom the redemption is to be made does not introduce an element of chance into the transaction. In State v. Caspare, 115 Md. 7 (80 Atl. 606), where the question before the court was whether the transaction there involved was a violation of the statute of Maryland passed in 1898, referred to in the case last above cited, the facts in that case were in substance as follows: A retail merchant delivered to his customers trading-stamps to be redeemed by a trading-stamp company, which maintained on exhibition, during business hours, articles with printed tags thereon, showing the number of stamps required to redeem each article, and permitted collectors of stamps, supplied with catalogs descriptive of the articles kept for the redemption of stamps, to select the articles either before or after the requisite stamps had been collected; the company advertising that the articles and values were subject to change without notice, and declaring that it tried to confine its articles to such as could be sup-

plied indefinitely. It was held that the transaction was not tainted with any element of chance, or violative of the act of 1898 prohibiting the dealing in trading-stamps for anything uncertain or indeterminate at the time of the acquisition of the stamps. In the opinion it was said: "The article for which he exchanges his stamps is the one of his choice, and is not determined by what may be upon the inside of a slip of paper not revealed to him until after the purchase, as in the Long case, supra, nor is the selection made by lot or chance. With this information in respect to the nature, character, and value of the articles on exhibition to be exchanged in redemption of the stamps, it can hardly be said that the article he is to receive is in all respects unknown to him at the time of the purchase. The determination of the uncertain features of this transaction is not dependent upon the element of chance which partakes of the nature of lottery or gambling and which appeals to the gambling instincts." The following cases were cited: Denver v. Frueauff, 39 Colo. 36 (88 Pac. 389, 7 L. R. A. (N. S.) 1131, 12 Ann. Cas. 521); People ex rel. Madden v. Dycker, 72 App. Div. 309 (76 N. Y. Supp. 111); O'Keefe v. Somerville, 190 Mass. 110 (76 N. E. 457, 112 Am. St. R. 316, 5 Ann. Cas. 684); Ex parte Drexel, 147 Cal. 763, 772 (82 Pac. 429, 2 L. R. A. (N. S.) 588, 3 Ann. Cas. 878); Territory v. Gunst & Co., 18 Hawaii, 196; Winston v. Beeson, 135 N. C. 272 (47 S. E. 457, 65 L. R. A. 167); State v. Dalton, 22 R. I. 77 (46 Atl. 234, 48 L. R. A. 775, 84 Am. St. R. 818); Young v. Commonwealth, 101 Va. 853 (45 S. E. 327); People v. Gillson, 109 N. Y. 389 (17 N. E. 343, 4 Am. St. R. 465); State v. Sperry & Hutchinson Co., 110 Minn. 378 (126 N. W. 120, 30 L. R. A. (N. S.) 966); State v. Ramseyer, 73 N. H. 31 (58 Atl. 958, 6 Ann. Cas. 445).

The evidence in the case at bar shows that the contract between the plaintiff and the defendant made provisions for the distribution to the public of the catalogs by both of the parties at the places of business of each, containing minute descriptions and pictures of all the articles which might be obtained in exchange for a specific number of certificates, and for the exhibition at the store of the defendant, and with right of exhibition at places of business of the plaintiff, of such articles so as to be seen by the general public and purchasers receiving certificates. The certificates in denominations of 5 and 10 cents, which were called coupons, were exchangeable

for those of larger denominations, beginning with 25 cents, and the certificates of the denomination of 25 cents and higher amounts contained on their face a reference to the catalog in which were described by names and pictures the articles which could be obtained for a specific number of certificates. While this system may have been an alluring method of appealing to the desire which seems a common human frailty to get something for nothing or something in excess of the article purchased, it did not appeal to the element of chance or gambling, and the articles which might be obtained for certificates did not fall within the designation of "any indefinite or undescribed thing, the nature or value of which was unknown to the purchaser at the time of the purchase of said article of goods, wares, or merchandise." It is evident, therefore, that the contract here involved was not inherently in violation of the statute. Nor did the evidence show that in the particular method in which the defendant conducted its business there was a violation of the statute, which is penal and must, therefore, be strictly construed. So construed, it can not be declared that the contract or its performance by the defendant is in violation of the statute and will necessarily involve the plaintiff in a breach of the criminal law, and so authorize plaintiff to obtain an injunction against the execution of the contract. The plaintiff can execute it lawfully, and so can the defendant. It was not made to appear that the defendant was executing it unlawfully, and therefore the plaintiff did not show cause for an injunction; and the trial judge properly so held. Under this view of the case, it is unnecessary to decide the constitutional grounds of attack which were made upon the statute, if it should be held that the contract and its execution involved any violation thereof.

*Judgment affirmed. All the Justices concur, except Atkinson, J., absent.*