# STATE OF MARYLAND *vs.* HENRY CASPARE AND FREDERICK CASPARE. STATE OF MARYLAND *vs.* JOSEPH FELZER. STATE OF MARYLAND *vs.* FRANK A. BREEDON.

*Criminal Law. Trading Stamps; Code of Public General Laws, Article 27, section 404; Acts of 1910, Chapter 381, section 412 A. Police Power.*

The Code of Public General Laws, Article 27, section 404 (section 263 A of the Act of 1898), relating to trading stamps and gift enterprises, is valid only so far as it prohibits gift enterprises or gratuities, which entitle the purchaser to something uncertain, undetermined and unknown to the purchaser at the time of his purchase, and having a semblance to gambling or lottery.                                        p. 21

The element of chance which is involved in cases of this character, to bring them within the prohibition of the statute, is the element of chance which appeals to the gambling instinct and which partakes of the nature of a lottery.           p. 21

It cannot be found in the mere purchase of merchandise and the receipt of the same accompanied by the gift of a stamp to be redeemed by the defendant or some other party. p. 21

If, at the time of the purchase, what the purchaser is to receive for the stamps held by him is uncertain, undetermined and unknown, and its determination is dependent upon such an element of chance as appeals to the gambling instinct, then the transaction is within the statute. p. 21

Where articles for which trading stamps may be redeemed are exhibited at stores of the trading stamp company, with tags showing the number of stamps necessary for each article, and collectors of stamps are invited to call and inspect the same, and are furnished with catalogues containing descriptive cuts of such articles, the determination of the uncertain feature of the transaction is not dependent upon the element of chance prohibited by the statute. pp. 21-22

Where the trading stamp company announces that it will substitute similar or better articles, should the identical articles, for which the stamps were to be exchanged, be no longer deliverable, this does not introduce into the transaction any objectionable elements of uncertainty or chance. pp. 24-25

By a legitimate exercise of its police power, the State, through its Legislature, may pass laws and regulations necessary for the protection of the health, morals and safety of society; but such regulations must be reasonable, and the question of their reasonableness is necessarily a judicial one. p. 26

The Legislature may not, under the guise of protecting public interests, arbitrarily interfere with private business or impose unusual and unnecessary restrictions upon lawful occupations. p. 26

The Legislature has no power to fix the value at which trading stamps are to be redeemed, and the requirements and conditions imposed on trading stamp companies by secs. 412, 412 A of Chapter 381 of the Acts of 1910 are void and unconstitutional. pp. 28-29

*Decided February 3rd, 1911.*

Appeal from the Criminal Court of Baltimore City (Dob-
ler, Heuisler and Duffy, JJ.).

These causes were argued together before Boyd, C. J.,
Pearce, Schmucker, Pattison and Urner, JJ.

*Eugene O'Dunne* and *Randolph Barton* (with whom were
*Isaac Lobe Straus, Attorney-General, A. S. J. Owens, Leon
E. Greenbaum* and *Martin Lehmayer* on the brief), for the
appellant.

*John Hall Jones* (with whom were *Morris Soper* and
*German H. Emory* on the brief), for the appellees, Frederick
and Henry Caspare and Frank A. Breedon.

*Morris Soper* (with whom were *Joseph C. France* and *A.
C. Binswanger* on the brief), for the appellee, Joseph Felzer.

Pattison, J., delivered the opinion to the Court.

Pattison, J., delivered the opinion of the Court.

The appellees in this case, the defendants below, were
indicted in the Criminal Court for Baltimore City under an
indictment containing three counts.

The first count charges in substance, that the defendants
did unlawfully use a scheme and device in the nature of a
gift enterprise for the sale of merchandise, in that they did
sell and deliver to one Benjamin B. Barber, Jr., eighteen
bars of soap, and in connection with such sale and delivery,
did then and there give and issue to the said Barber, as an
inducement to said purchase, ten stamps, commonly called
"trading stamps," that had been furnished to the defendants
by certain other persons engaged in the trading stamp busi-
ness, to wit: the Sperry and Hutchinson Company, a body cor-
porate, to be used by the defendants in connection with the
sale of merchandise by them, which said stamps the said
company, being then and there the agent of the said defend-

ants, had agreed to redeem, upon presentation to it, and in exchange therefor to give to the holder thereof something uncertain, undetermined and unknown to the said Barber at the time of said purchase; and, as alleged, in violation of section 263 A of Chapter 207 of the Acts of 1898, and codified in the Code of 1904 as Article 27, section 404.

In the second count they were charged with the violation of section 412 of Chapter 381 of the Acts of 1910, in that "none of which said trading stamps (so issued by them) did then and there have a monetary redeemable value of at least one cent current money."

The third count charges, in substance, that the defendants unlawfully failed, at the time of the issue of said stamps, to deliver to said Barber, the receiver of said stamps, a printed or written statement clearly setting forth the date and place of issue of said stamps, and every right given to the receiver thereof, also the names of the defendants issuing and the name of said Barber, the receiver of said stamps, also a full and itemized list of each and every article for which said stamps either singly or in connection with other similar stamps might thereafter be exchanged or redeemed by the holder thereof, and also the exact number of such stamps required for the redemption of each of said specific articles or things enumerated in such statement; and, as alleged, in violation of section 412 A of Chapter 381 of the Acts of 1910.

The defendants filed a special plea to all three counts of the indictment, alleging, in substance, that they, the defendants, were on the 11th day of May, 1910, engaged in the retail grocery business in the city of Baltimore, and that on said last named day they, at their place of business, sold unto one Benjamin B. Barber, Jr., certain merchandise, at and for the sum of one dollar which was paid to them in cash, and that at such time the defendants delivered to the purchaser ten coupons, tickets or vouchers known as the Sperry and Hutchinson green trading stamps, being at the rate of one stamp for each ten cents of merchandise so purchased, pursuant to the terms of a written contract or agreement

existing between the defendants and the Sperry and Hutchinson Company, a foreign corporation duly authorized to transact business in the State of Maryland, whereby the said company furnished said trading stamps to the defendants. who agreed to deliver said stamps to their customers as an inducement for cash trade. By the contract it was agreed by the company that it would redeem said stamps with goods and merchandise when presented by the customers of defendants in its trading stamp books in lots of 990 stamps, and according to law, "collected in the manner prescribed and subject to the conditions" in the trading stamp books of the company hereinafter referred to. One of which conditions is as follows:

### "NOTICE

"To the Public and to the Customers of our Subscribers:

"This book and the trading stamps which are issued by the undersigned are so issued, and are received by you, pursuant to certain restrictions and limitations concerning their use contained in this written contract made for your benefit between the undersigned and the merchants authorized to re-issue them to their customers. Neither the books nor the stamps are sold to you or the merchant, the title thereto being expressly reserved in the undersigned. They are furnished for you as evidence of payments to our subscribers, the only righ which you acquire in said stamps is to paste them in books like this and present them to us for redemption."

That said company is engaged in the business of advertising defendants and other merchants in the city of Baltimore for the purpose of increasing the trade, and especially the cash trade of such merchants as contract for its services. That the company maintains a three-story and basement store on N. Howard street, in the city of Baltimore, and also a store in the large department store of Stewart & Company, in said city. These stores are stocked with goods, wares and merchandise, consisting of sideboards, chairs, china closets, tables, lamps, desks, bookcases, rugs, bedspreads, silver ware, plated ware, china, cut glass, pictures, statuary, musical instruments, and various other classes of articles for house-

hold use, and are open to the public during the business hours of each day, and the company by various methods of advertising, invites the public to enter and inspect said merchandise, which is of the value of many thousand dollars. Each of said articles bears a printed tag correctly showing the number of stamps in exchange for which said company offers to give such articles free of charge to the person presenting such stamps.

That the company employs numerous persons in said stores and as canvassers, who go from house to house in Baltimore City, and especially in the neighborhood of defendants' store, all of whom explain to the general public that the company will deliver said articles of merchandise in exchange for Sperry and Hutchinson green trading stamps in certain numbers. That the canvassers carry with them catalogues containing many hundred illustrations of the merchandise carried by said company in said stores, which catalogues describe said articles and state the number of stamps accepted in exchange for each article. Said catalogues and directories containing the names of the merchants of the city dealing in such stamps, and trading stamp books are · left at the houses by the canvassers. That the offer of the company was, until the passage of the Act of 1910, known as the Trading Stamp Act, also brought to the attention of the public by means of large and frequent advertisements thereof in the newspapers of Baltimore City, at which time the newspapers refused to accept advertisements offered by the company; since then, as well as before, they have advertised in various other ways. The agents of the company inform the public that said stamps may be procured from those merchants with whom the company has advertising contracts, and the said merchants will deliver said stamps to the customers as an inducement for cash trade.

That by experience the company has found that the stock which is usually carried in its stores is sufficient to redeem all of the stamps presented for redemption in the usual course of business, which stock is about two-thirds of that

required to redeem all of its outstanding stamps if all were presented for redemption at the same time. That it is fully able and willing, however, at all times to purchase and provide sufficient articles equal in value to the articles kept in its stores for the redemption of all of its outstanding stamps. That it replenishes its stock from time to time with articles of identically the same make and nature, while other articles are not replaced, but for them are substituted other articles of attractive character and of the same relative value, particular regard being had to the seasons of the year and the requirments of the public based upon its experience. The company also, when requested, agrees for a reasonable time to set aside any particular article in its stores selected by a collector of stamps, although such collector may not have, at the time of such request, the number of stamps required for such article. Such change as the company makes in the kind and character of its merchandise is made for the purpose of accommodating the varying tastes and meeting the requirements of the public.

The plea alleges that there is no time limit placed by said company within which the stamps received by Barber, or any of the stamps issued by said company, must be presented for redemption. That different collectors of stamps take different periods of time to fill a trading stamp book for redemption, depending upon the amount of purchases with which they receive stamps; and that the company maintains throughout the United States more than four hundred and fifty stations or stores in any one of which said trading stamps received by Barber would be redeemed. That the stamps are without intrinsic value and are delivered to their customers only as evidence of payment in cash and as an inducement for such payment because of their value in enabling defendant's customers to obtain the articles of merchandise offered by the company in exchange therefor.

That by the contract the defendants agreed to pay to the company for the use of said stamps and for the publication of defendants' names in the directories, and for the adver-

tising signs which are displayed in the windows and other prominent places in and about defendants' store, and for said trading stamp books, and for such other advertising as said company might do for defendants during the term of the contract, at the rate of $3.50 for each one thousand of said stamps ordered by them from the company.

That the company also offers to the public, in addition to said contract obligations with the defendants, to exchange its merchandise for said trading stamps when presented in any number from one upwards and whether or not contained in said trading stamp books, and carries in said store articles of different kinds for the redemption of said stamps in numbers less than 990, which is the number required by the company to fill one of its trading stamp books. The redemption of stamps in numbers less than 990 constitutes a relatively insignificant part of the business.

The plea further alleges, in response to the charges contained in the second count of the indictment, that the rate now paid by the defendants for the trading stamps of said company, including as it does the expense of advertising done by said company for the defendants, as aforesaid, is as high as defendants can afford to pay for such service. That the defendants would be compelled to pay at the rate of at least ten dollars per thousand for the redemption of trading stamps of the value of one cent each, which is about 300 per cent. more than defendants now pay for the trading stamps of said company, including the advertising as aforesaid.

That the greater number of their sales are in amounts so small that if defendants were compelled to give with such sales trading stamps of the value of at least one cent each; defendants would be giving to their customers a discount far in excess of what defendants can afford with any profit or advantage to themselves; that, therefore, the defendants would be denied the benefits of the use of trading stamps in connection with a very large proportion of their business.

The plea further alleges, in response to the charges contained in the third count of the indictment, that the said

Barber at the time he purchased the merchandise and received said trading stamps from defendants could easily have ascertained that the company has two stores in the city of Baltimore and that in said stores were publicly displayed articles of merchandise to be given in exchange for said stamps, and could have easily ascertained the terms and conditions of the offer made by said company for the redemption of the stamps. That at the time and place of the sale of such merchandise he, Barber, knew the date and place of the sale of such merchandise and the date and place of the issue of such stamps, and also the names of the defendants so issuing and giving the trading stamps, and also his own name, the receiver thereof; and at such time and place he, the receiver of the stamps, could readily have ascertained the general conditions under which said business is carried on as described in the plea.

The plea further alleges that the costs to the defendants in time, labor and material in preparing such a statement as referred to in the third count of the indictment, would be so large as to impose a great and unnecessary burden upon the defendants without any corresponding profit or advantage either to the defendants or their customers; that defendants' customers could readily have ascertained the general conditions under which said business is carried on as described in the plea, and that the presentation of such a statement would be nothing but an annoyance to defendants and to their customers and would tend to drive away trade from defendants and would prevent the use of said trading stamps and destroy the value of the defendants' contract with the trading stamp company. To this special plea the State demurred.

The learned Court below, consisting of JUDGES DOBLER, HEUISLER and DUFFY, in passing upon the demurrer, held "that the plea as to the first count of the indictment is a good and sufficient answer thereto, and that sections 412 and 412 A of Article 27 of the Code of Public General Laws of Maryland, as enacted by Chapter 381 of the Acts of the General Assembly of Maryland of 1910, upon which the

second ·and third counts of said indictment are respectively
based, are unconstitutional, and that therefore the State's
demurrer to the plea to the second and third counts should
be treated as a demurrer of the defendant to the second and
third counts of said indictment," and accordingly overruled
the demurrer to the plea to the first count of the indictment
and sustained the demurrer to the second and third counts.
Upon this ruling of the Court, judgment was entered upon
each count of the indictment, and from this judgment the
appeal is taken.

The first of this class of cases to reach this Court· was the
case of ·State v. *Long,* 73 Md. 527. The defendant was
indicted in the Criminal Court of Baltimore City charged
with violating Chapter 480 of the Acts of 1886, codified as
section 185 of Article 27 of the Code of Public General Laws,
which provided that "no person or body corporate shall be
permitted, either directly or indirectly, by agent or other-
wise, to barter, sell or trade, or offer for barter, sale or trade,
by any publication or in any way, any wares, goods or mer-
chandise of any description in package or bulk, holding out
as an inducement for any such barter, sale or trade, or the
offer of the same, any scheme or device by way of gift enter-
prise of any kind or character whatever." The defendant
demurred to the indictment upon the ground that the Act
of Assembly under which he was charged was unconstitu-
tional. The demurrer was overruled, evidence was taken and
a verdict of guilty rendered, but, as stated in the opinion,
no final judgment was entered, in consequence of which the
ruling upon the demurrer was not before the Court for its
review and therefore the Court did not determine the point
raised by the demurrer as to the validity of the statute.

The only question there presented and determined by the
Court was to the admissibility of certain testimony, which
when stated by the Court was as follows: That the defendant
long kept a general grocery store in the city of Baltimore,
known as the Northern Central Supply Company; that the
defendant sold to the prosecuting witness, for the sum of

twenty-five cents, three one pound packages of ground coffee, called the "Big Bonanza Coffee." That on each of said packages was pasted a blue slip of paper about three-fourths of an inch wide and extending nearly around the package; that the outside of the slip was blank, but on the inside of each slip was printed respectively the following: One plate, one plate, one saucer; and that said slips were placed on either end of the package in such manner as to be easily torn off. That the witness Riley tore the slips from the packages and presented them to the witness Clark (clerk of the defendant) who then presented him with three pieces of crockery ware, consisting of two plates and one saucer which were produced at the trial. That these pieces of crockery were obtained by the witness Clark from a selection of crockery ware on exhibition in said store in view of customers, and that there was also displayed in the store a number of packages of said coffee and a number of pieces of said crockery ware, and a notice or a card to this effect "A piece of this crockery ware given with each pound."

As to these facts the Court, speaking through JUDGE FOWLER, said: "If the scheme which is thus shown by the evidence to have been adopted by the appellant, and which certainly is not characterized by any originality, is not a gift enterprise, it would be difficult to find words to describe it," and the Court accordingly affirmed the rulings of the lower Court and the cause was remanded; whereupon a final judgment was entered in the lower Court and from that judgment the second appeal was taken.

Upon this appeal the only question presented was upon the ruling of the Court below in overruling the defendant's demurrer to the indictment. This Court, again speaking through JUDGE FOWLER, said: "It is apparent that the giving away of property without consideration, whether by lot or otherwise, is not in itself an evil and certainly not an evil that requires prohibition by law at the present day." And the Court in referring to the statute further said: "This broad and sweeping language would seem to include not only

a lottery in which a valuable consideration is given for the chance to win a prize, but also a gratuitous distribution not involving the eletents of chance."

"In so far as the object of an Act is to protect the morals and advance the welfare of the public by prohibiting every scheme and device bearing any semblance to lottery or gambling, it undoubtedly would be a valid exercise of power. But the Act in question goes further and in effect, as we construe it, declares as did the New York Statute, which was held invalid in the case referred to (*People* v. *Gillscn*, 109 N. Y.), that no person shall give away anything to a purchaser of goods, wares or merchandise as an inducement to make the purchase."

"Such a regulation of trade is, in our opinion, not only unwise but unlawful, because it is necessary neither for the health, safety nor welfare of the people and which in its operation would be oppressive and burdensome."

"It follows that the Act, by reason of its general terms, including as it does all gift enterprizes, those involving the elements of chance as well as those that do not, is invalid so far as it applies to gift enterprizes not involving chance."

Following the case of *Long* v. *State, supra,* is the case of *State* v. *Hawkins,* 95 Md. 141. The defendant in that case, under the first count of the indictment, was charged with violation of the Acts of 1898, Chapter 207, the same statute under which the defendant in this case is charged in the first count of the indictment. In that case the defendant contended that the Act was unconsttiutional and demurred to each count of the indictment, including the first. The Court sustained the demurrer and quashed the indictment. It was from that judgment that the State appealed, and the only question presented by the appeal was as to the validity of the statute.

In that case, as stated in the opinion of this Court: "The first (count of the indictment) charges that the defendant 'unlawfully did use, hold for use and sell to one Walter J. Gregory a certain stamp, commonly called a "trading stamp,"

and a certain ticket and check' which was a scheme and device for the sale, etc., of certain goods, wares and merchandise, holding out as an inducement for such sale, etc., the giving and issuing of such stamp, ticket and check which was to be and might have been presented to and redeemed by some person and association of persons other than the traverser, the holder getting and receiving in exchange therefor a certain gift, prize, gratuity and divers other things uncertain, undetermined and unknown to him, the said Walter J. Gregory, the purchaser of said goods, wares and merchandise, at the time of the purchase thereof."

There was no evidence taken nor was any agreed statement of facts filed, the only facts were those found in the indictment and it was upon these facts alone that the Court reached the conclusion that it did.

The Court, speaking through JUDGE BOYD, in referring to the case of *State* v. *Long, supra,* said: "The Act of 1886 prohibited holding out as an inducement for any such barter, sale or trade, or the offer of the same, 'any scheme or device by way of gift enterprise of any kind or character whatsoever,' and the Court said that that broad language not only included 'a lottery in which a valuable consideration is given for the chance to win a prize, but also a gratutious distribution, not involving the element of chance.' The statute was only held to be inavlid so far as it related to the latter."

"But section 263 A of the Act of 1898 (now codified as section 404 of Article 27 of the Code of 1904) is not thus broad and comprehensive in its terms. It only condemns the giving and issuing of a stamp (we can omit the other things mentioned) to be presented to a person or association of persons other than the vendor of the goods sold which entitles the holder to get or receive, in exchange therefor, any gift, prize or gratuity, or anything *uncertain, undetermined or unknown* to the purchaser of said goods, wares or merchandise at the time of the purchase thereof. If the vendor holds out as an inducement to purchase his goods, wares and merchandise the giving of a stamp which will thus

entitle the purchaser to something. which is *uncertain*, *undetermined and unknown* to him at the time of the purchase, the transaction is certainly one bearing some "semblance to lottery or gambling—involving the elements of chance." ·

In referring to the second count in the · indictment the Court said: "The second count relies on the allegation that the stamp was to be redeemed by the traverser 'at a certain place other than that .where said barter sale or trade was made.' The mere fact that it was to be so redeemed does not introduce into the transaction such an element of chance as would distinguish it from *Long* v. *State*. We are therefore of the opinion that the demurrer to the count was properly sustained."

Since the case of *State* v. *Hawkins* this statute has not been before this Court to be construed or· passed upon by it, although cases arising thereunder have been heard and determined in other Courts of the State: one, the case of *State* v. *Black,* tried in the Circuit Court for Baltimore County before JUDGES FOWLER and BURKE, sitting as a·jury, and another, .the case of *State* v. *Frankel,* tried in the Criminal Court for Baltimore City before JUDGE RITCHIE, also·sitting as a jury. In each of these cases evidence was taken and the facts disclosed were very similar to the facts of this case, and upon such facts verdicts of not guilty were reached. ·

It was because of the semblance of lottery or gambling found in the language of the statute, "uncertain, undetermined and unknown to him at the time of the purchase," that this Court in the *Hawkins Case* held the statute valid.

The question as to the validity of the statute was the only question presented to this Court in the *Hawkins Case*. The Court was not called upon to determine whether or not the defendant had violated the provisions of the statute and no facts were presented to it from which it · could determine whether the element of chance which partakes of the nature of .lottery or gambling actually existed· in the transaction.

The Court in this case as to the first count of the indictment is not called upon to pass upon the validity of the

statute, but to consider the facts presented by the defendants' plea and determine the question raised thereby as to its sufficiency. The element of chance which is involved in the consideration of cases of this character, is the element of chance which appeals to the gambling instinct and which partakes of the nature of lottery. This cannot be found in the mere purchase of merchandise and the receipt of same accompanied by the gift of a stamp to be redeemed either by the defendants or some other party, but, if found at all, will be found elsewhere in the transaction.

"The mere fact that it was to be redeemed does not introduce into the transaction such element of chance as would distinguish it from *Long* v. *State*," and "whether or not the stamp is to be redeemed by the party selling the goods, wares or merchandise or by a third party is not of itself material." *State* v. *Hawkins, supra.*

If, at the time of the purchase of the merchandise, that which the purchaser is to receive for the stamps held by him is "uncertain, undetermined and unknown" to him, and the determination of that fact is dependent upon an element of chance which partakes of the nature of lottery or gambling and which appeals to the gambling instinct, then such facts bring the transaction within the meaning of the statute, as construed by this Court in the *Hawkins Case;* but if the determination of that fact does not depend upon such element of chance, then it does not fall within the meaning of the statute. Therefore, it is necessary in cases arising under this statute to determine from the facts of each case whether the element of chance, as characterized or defined by us, exists.

The articles with printed tags thereon showing the number of stamps required to redeem each article, are on exhibition in the stores of the trading stamp company which are open during the business hours of each day and where the collectors of stamps are invited to call and examine and inspect the article there exhibited.

The collectors of stamps are furnished with catalogues containing cuts or illustrations descriptive of the articles so kept for the redemption of the stamps. If he wishes, the collector can, before he has collected the requisite number of stamps, select from the articles on exhibition the one he wants and it will be held for him for a reasonable time awaiting the collection by him of stamps sufficient to obtain it. If he does not do this but waits until he has collected his book or books of stamps, he may then select from the whole list of articles in the store or stores the one he wishes within the range of the purchasing power of the stamps held by him. The article for which he exchanges his stamps is the one of his choice and is not determined by what may be upon the inside of a slip of paper not revealed to him until after the purchase, as in the *Long Case, supra,* nor is the selection made by lot or chance. With this information in respect to the nature, character and value of the articles on exhibition to be exchanged in redemption of the stamps, it can hardly be said that the article he is to receive is in all respects unknown to him at the time of the purchase. The determination of the uncertain features of this transaction is not dependent upon the element of chance which partakes of the nature of lottery or gambling and which appeal to the gambling instincts. *Denver* v. *Frueauff,* 39 Col. 36; *People ex rel Madden* v. *Dycker,* 72 App. Div. N. Y. 309; *O'Keefe* v. *Somerville,* 190 Mass. 110; *Ex parte Drexel,* 147 Cal. 772; *Territory* v. *Gunst & Co.,* 18 Hawaiian, 196; *Winston* v. *Beeson,* 135 N. Car. 272; *State* v. *Dalton* 22 R. I. 77; *Young* v. *Commonwealth,* 11 Va. 853; *People* v. *Gillson,* 109 N. Y. 389; *State* v. *Sperry & Hutchinson Co.,* 126 N. W. 120; *State* v. *Ramseyer,* 73 N. H. 31.

In the trading stamp books issued by the company is found the following provision, which is made a part of the plea:

"We have tried to confine this list to such articles as can be supplied indefinitely; but the styles and demands of the times are constantly changing, and it may occasionally happen

that an article shown and described is discontinued. Our aim, however, is to improve our lines wherever possible. Whenever an article is discontinued, it may be depended upon that the one we substitute is an improvement. Generally our 'premiums' will be maintained exactly as herein illustrated and described, and only in rare instances would a substitute occur. The articles and values, however, are subject to change without notice."

By this provision it is contended by the appellant that it is possible that an article on exhibition in the store at the time the collector commenced his purchases, and one for which he at the time determined to exchange his stamps when he had collected a sufficient number with which to do so, would be disposed of and not on exhibition at the time he had acquired the requisite number of stamps, and it is therefore contended by the appellant that the article to be received by the purchaser is, within the meaning of the statute undertermined, uncertain and unknown to the purchaser at the time of the purchase.

In commenting upon this feature of the transaction the appellant in his brief says: "Not only did the company reserve the right to change articles and values without notice, but they are bound to do so. In a legitimate business when a merchant sells an article he either delivers it or sets it aside for a purchaser, but in the trading stamp business it is manifestly impossible to know when and in what quantities the stamps will come in or which holder will want certain exhibited or advertised articles. * * * If the company had to give them something which was certain, determined and known at the time of the purchase the company would have to go out of business. Such a condition is peculiar to the trading stamp business and is found in no other legitimate business."

We are therefore called upon by the appellant to decide that a business which is otherwise a legitimate business, becomes unlawful when this essential feature of uncertainty is injected into the transaction, and we are told that should

we so decide the effect of such decision would be the destruction of this class of business, to the injury of the defendants and many others.

While we find in the above paragraph taken from the trading stamp book the provision that "the articles and values, however, are subject to change without notice,"—a right reserved by the company which is stated by the appellant to be necessary for its protection,—we also find therein the declaration of the company that they "have tried to confine this list to such articles as can be supplied indefinitely; but it may occasionally happen that an article shown and described is discontinued. Generally, our premium will be maintained *exactly* as herein illustrated and described, and only in *rare* instances would a substitute occur." It is also said in the plea that if substitutions are made, the articles substituted are of *equal* value with the articles displaced. These are the declarations of the company and like other business enterprises its success as well as its existence largely depends upon its fair dealings with its customers and the fulfillment of its promises.

The Supreme Court of New Hampshire, in the case of *State* v. *Ramseyer,* 73 N. H. 31, in passing upon the validity of the statute of that State which attempted to regulate the class of business involved in this case, said: "That the element of chance might be introduced into the scheme, so that the purchaser could not know what he was to receive, but would be obliged to leave the selection of the premium to be determined by other means than his free choice (*State v. Clark,* 33 N. H. 329-335), is the assumption of pure speculation as a fact upon which to predicate the validity of the statute. Most commercial transactions may be so conducted as to involve the element of chance to a pernicious degree. But this possibility alone would not justify the Legislature in prohibiting any useful occupation it may select, or preclude the Court from declaring the Act unconstitutional. There is no presumption that men in business affairs will cheat, defraud and deceive their customers. The evil effects

of a business enterprise, when they exist, as a legal proposition are ascertained from its logical, or necessary or usual results—not from the fact that an unscrupulous man may resort thereto for improper or illegitimate purposes."

As stated above, we do not think that the uncertainty complained of, without which the business of the trading stamp companies would be destroyed, to the injury of the defendants and others, as alleged by the appellant, is an element of chance which partakes of the nature of lottery or gambling and which appeals to the gambling instinct.

We now come to the consideration of the second and third counts of the indictment. It is contended by the defendants that the section of the Code of Public General Laws of Maryland, upon which these counts are based, are unconstitutional and void, and in this contention the defendants are sustained by the learned Court below.

Section 412 of Article 27 of the Code, upon which the charge in the second count is based, provides that "No person * * * shall issue * * * any stamps * * * of which the redeemable value shall be less than one cent, and said monetary redeemable value shall be legibly printed or written upon the face of each stamp * * * so issued, sold or given."

Section 412 A of the same article, upon which the charge in the third count is based, provides in substance, that no person shall issue any trading stamp unless such person shall deliver to the receiver thereof either a printed or written statement giving the date and place of issue, every right of the receiver acquired thereby, the name of the trading stamp company by which the same is to be redeemed, the name of the party issuing and of the party receiving the stamps. The statement to include, if the stamps are to be redeemed in anything other than money, a full and itemized list of each and every article for which the stamps may be thereafter exchanged by the holder and the exact number of stamps required for the redemption of each of such articles enumerated in the statement, and further provides that no such rights of the receiver, as set forth in the statement, shall

thereafter be altered in any way, either as to kind, quantity, quality or nature of the articles for which the stamps may be redeemed or exchanged without the consent of the holder thereof. ·

This statute containing these sections of the law was passed by the Legislature in what it regarded the exercise of its police power. "It must always be conceded, of course, ·that the State can, through its Legislature, by the legitimate exercise of its police power, pass 'laws and regulations necessary for the protection of the health, morals, and safety of society;' *Singer* v. *State,* 72 Md. 446; ·yet such regulations must be reasonable, and 'what are reasonable regulations, and what are subject to police power, must be necessarily judicial questions;' *Toledo W. & W. Rw. Co.* v. *City of Jacksonville,* 67 Ill. 40;" *Long* v. *State,* 74 Md. 572.

In the case of *Lawton* v. *Steele,* 152 U. S. 133, in which the constitutionality of an Act of the Legislature of the State of New York was involved, the Court said: "The extent and limit of what is known as the police power have been a fruitful subject of discussion in the Appellate Courts in nearly every State of the Union. * * * To justify the State in thus interposing its authority in behalf of the public, it must appear, first, that the interests of the public generally, as distinguished from those of a particular class, require such interference; and, second, that the means are reasonably necessary for the accomplishment of the purpose and not unduly oppressive upon individuals. The Legislature may not, under the guise of protecting the public interests, arbitrarily interfere with private business or impose unusual and necessary restrictions upon lawful occupations. In other words, its determination as to what is a proper exercise of its police power is not final or conclusive but is subject to the supervision of the Courts."

In the case of *State* v. *Sperry and Hutchinson Co.,* 126 N. W. Rep. 120, the Supreme Court of Minnesota was asked to pass upon the constitutionality of an Act, of that State ·which provided that when two or more persons enter into a

contract similar to the one before us in this case, that such parties shall be deemed to be engaged in a gift enterprise, unless the articles so promised to be given as gifts or premiums with or on account of such purchases, shall be definitely described on such stamp and its value fully made known to the purchaser at the time of the sale, and unless the right of the holder of such stamp to the premium so promised becomes absolute on the completion of its delivery without the holder being required to collect any specific number of other similar stamps and present them for redemption together, and the right of the holder of such stamps to the prize so offered is absolute and does not depend upon any chance, uncertainty or contingency whatever; and further provided that any person engaging in such gift enterprise was guilty of a misdemeanor. The Court there, in speaking of the statute, said: "It requires that each stamp or ticket shall have described thereon the character and value of the gift which redeems it or such facts shall be made known to the customer at the time of the purchase. Each separate stamp must be treated independently and redemption collectively is prohibited. It is apparent that it would not be practicable to redeem stamps of the value of one mill or one cent, nor to print on each stamp the character of the article offered for its redemption. To make such a provision practicable would require each stamp to be issued in denominations to correspond with each purchase. Most cash purchases are in small amounts and the restrictions imposed by Chapter 142 necessarily limits the articles offered for redemption to those of practically no value;" * * * and that "the provisions requiring each stamp to be valued and redeemed independently of other stamps and to have printed thereon its value and character of the article offered for redemption, constitute unnecessary restrictions amounting to practical prohibition of the business as conducted by respondents, and are not a proper exercise of power of police regulations."

The defendants, as we here hold, were engaged in a lawful business, and therefore "to justify the State in thus inter-

posing its authority in behalf of the public it must appear, first, that the interests of the public generally, as distinguished from those of a particular class, require such interference; and, second, that the means are reasonably necessary for the accomplishment of the purpose and not unduly oppressive upon individuals." If these facts or requirements do not appear, then any legislative enactment under the guise of protecting public interests is repugnant to the 14th Amendment of the Constitution of the United States and, is therefore, void.

This legislation converts the stamp formerly used by the defendants, which was merely an evidence of the purchase of so much merchandise from the defendants with no intrinsic value, into a thing of fixed value, such value not to be less than one cent. As an evidence of the purchase, these stamps, without intrinsic value, were to be presented to the company in exchange for articles with which they were to be redeemed under a contract between the company and the defendants. By this section of the statute the use of these stamps is practically changed and the defendants deprived of all benefits resulting from that feature of their business.

The power of the Legislature to fix the value of these stamps that the defendants are to issue, no more exists, than their power to fix for the defendants the price of the merchandise sold by them at the time of the issuance of the stamps, and this power they did not have.

As to the requirements and conditions placed upon the defendants by section 412 A, of the statute we hardly think it is necessary to discuss them. From the character of them the object is clearly seen. It is too apparent that these conditions and requirements imposed, were not to regulate, but to prohibit the issuance of the stamps. If the defendants were required to assume these burdens the work incident thereto would be so onerous as to make it entirely unprofitable to them, and would be a great annoyance to their customers. The conditions and restrictions contained in these last two sections of the law upon which the second and third counts

of the indictment are based are unreasonable and unnecessary and amount to a practical prohibition of the business as conducted by the defendants and therefore are not a proper exercise of the police power of regulation.

We therefore agree with the learned Court below in holding that the plea is a complete answer to the first count of the indictment and that section 412 and 412 A of Chapter 381 of the Acts of 1910 are unconstitutional. We will therefore affirm the judgment of the Court below.

*Judgment affirmed, with costs to the appellee.*
*appellee.*