# KENSINGTON RWY. CO. OF MONTGOMERY CO. *vs.* CLARENCE MOORE AND THE NATIONAL SAVINGS AND TRUST COMPANY, A CORPORATION.

*Grants of land; construction; intention of grantor and grantee; rights of third parties.  Location of road. Appeals; exception to evidence.*

A grant to a railway company, conveying so much land, in addition to a 25-foot strip, as might be required, "for side tracks, turnouts, as the same shall finally be located," does not authorize the construction of additional turnouts and side tracks on the adjoining land of the grantor fifteen years after the road has been in operation.    p. 39

The word "located" may be the determination and designation of the precise place where the road is to be built, or it may mean the actual construction of the road; the "final location" of the road is the final determination of the place where the road is to be built or its place of actual construction.    p. 39

Regardless of an intention of a grantor and grantee, other than that expressed in the deed, the rights of their assignees are measured by the terms of the deed.    pp. 42-43

On appeal, exceptions to evidence will not be considered when, even if admissible, the evidence would not justify a reversal.    p. 42

*Decided February 3rd, 1911.*

Appeal from the Circuit Court for Montgomery County (HENDERSON, J.).

The cause was argued before BOYD, C. J., BRISCOE. PEARCE, SCHMUCKER, BURKE, THOMAS, PATTISON and URNER, JJ.

*Robert H. Phillips* and *Charles W. Prettyman,* for the appellant.

*Robert B. Peter,* for the appellee.

THOMAS, J., delivered the opinion of the Court.

In 1894, the Chevy Chase and Kensington Electric Railway Company of Montgomery County, Maryland, proposing to build an electric road from Chevy Chase Lake to Kensington, in Montgomery County, obtained from Alfred Ray and his wife, who owned a farm or tract of land containing four hundred and sixty acres, more or less, the following deed:

"This indenture, made this thirteenth day of September, 1894, between Alfred Ray and Eleanor Ray, his wife, of the first part and the Chevy Chase and Kensington Electric Railway Company of Montgomery County, Maryland, of the second part:

"Witnesseth, that the said parties of the first part, of the State of Maryland and county of Montgomery, the subscriber hereto, in consideration that the Chevy Chase and Kensington Electric Railway Company, does locate its railway through, in and upon lands owned by the said party of the first part in Montgomery County, State of Maryland, and in further consideration of the sum of one dollar to us in hand paid by the said party of the second part, the receipt whereof is hereby acknowledged, do hereby grant, bargain, sell, covenant and convey to the said party of the second part, its agents, attorneys, successors or assigns, a strip of land twenty-five feet in width, and such additional width as may be required in the construction and use of said railway at cuttings and embankments and also for side-tracks and turn-outs, as the same shall be finally located and extending in length as far as the said railway shall pass over said lands; together with the right to direct and bridge streams of water for railway purposes and to take and use any stone or timber or other materials within the limits of said strip

of land. The land hereby conveyed is particularly described as follows," etc., etc. :

The land of which the right of way described in said deed was a part was conveyed, in 1908, to the National Savings and Trust Company, one of the appellees, and it is alleged in the bill and admitted in the answer filed in the case, that Clarence Moore, the other appellee, is the equitable owner thereof.

The road, with a turnout and sidetrack two hundred feet "long from switch point to switch point," and about sixty "feet between clearance points," was located and constructed on the land described in said deed from Ray and wife, and was completed in 1894.

At the time the appellees became the purchasers of the Ray farm, there had been no change in the location of the road or turnout and sidetrack, and they remainded as originally constructed from 1894 until sometime in 1909 or 1910, when the appellant, as the assignee of the property, rights, etc., of the Chevy Chase and Kensington Railway Company of Montgomery County, and with the view of extending the road and providing for additional business, began the construction of another turnout and sidetrack on the farm of the appellees, outside of and "adjoining the twenty-five foot strip of land conveyed by said deed from Alfred Ray."

The bill was filed in the Court below to enjoin the construction of another turnout and sidetrack on the appellees' land, and the appeal in this case is from the decree of that Court granting the injunction.

The record presents but one important question, and its solution depends upon the proper construction of the deed from Alfred Ray and wife, and particularly of that part of the deed which describes the subject of the grant as "a strip of land twenty-five feet in width, and such additional width as may be required in the construction and use of said railway at cuttings and embankments and also for sidetracks and turnouts, as the same shall be finally located," etc. Whether

the word "same" refers to the track of the railway, or to the turnouts and sidetracks, or to the track and turnouts and sidetracks, can make no difference, for in either case the grant, so far as it relates to the turnouts and sidetracks, is of so much land, in addition to the twenty-five feet strip, as may be required "for sidetracks and turnouts, as the same (the track, the sidetracks and turnouts, or the track and sidetracks and turnouts), shall be finally located," and the important inquiry is as to the meaning of the words "finally located."

The significance of the term "locate" depends somewhat upon the connection in which it is used. When referring to roads it may mean the determination and designation, by those authorized to do so, of the precise place where the road is to be built, or it may mean the actual construction of the road. *Bucksport & Bangor* v. *Brewer,* 67 Maine, page 300; *N. & N. W. R. R. Co.* v. *Jones & Baker, Adm'rs.,* 42 Tenn. (2 Coldwell's) 574, and cases cited on pages 4217, 4218 and 4221 of Volume 5 of Words and Phrases. The final location of a road is, therefore, the final determination of the place where the road is to be built or the actual construction of the road.

Independent, however, of any strict or technical interpretation of the words employed, it would seem unreasonable to suggest that a road that was completed and operated as originally designed for more than fifteen years was not finally located.

The grant of land for turnouts and sidetracks is limited by the deed to the necessities of the road as finally located, and as the road and sidetrack were finally located in 1894, there is no room for the contention of the appellant that it is authorized to construct additional turnouts and sidetracks on the land of the appellees to meet the present needs of the road. A different construction would not only justify the building of the sidetrack objected to, but would warrant the taking of such additional land of the appellees for sidetracks and turnouts as the future extensions of the road and the

development of its business may require, and, as said by the learned Court below, would impose upon the appellees and any subsequent owner of the Ray farm, "an uncertain, indefinable, and continuing burden." There could, of course, be no objection to the grant of such rights as is contended for by the appellant in connection with the conveyance of a right of way, but in view of the restrictive terms of the deed in this case, a Court can not, by construction, extend the grant in order to meet the present necessities of the appellant, however pressing the demands may be.

As the consideration for the deed was the location of the road on the land of the grantor, it may be assumed that he expected to derive some benefit from such location. But if, as suggested by the appellant, he expected to divide his land adjoining the right of way into building lots, it is hardly probable that he intended to convey to the railway company the right to take any part of those lots for such additional turnout and sidetracks as it might in the future determine to construct. Regardless, however, of what may have been the intention of the grantor and grantee other than that expressed in the deed, as between the appellees and the appellant the rights of the latter must be measured by the terms of the deed.

The deed, properly construed, limited the grant of land for sidetracks and turnout to such sidetracks and turnouts as were originally constructed when the road was built in 1894, and the appellant is not authorized by said deed to take the land of the appellees.

We have carefully examined the cases cited by the appellant, but do not find in them anything to justify its contention in this case. They relate mainly to railroad charters, and legislative grants of power and authority to build and maintain railroads. For instance, in the case of *C., B. & Q. R. R. Co.* v. *Wilson,* 17 Ill. 123, the charter of a railroad company authorized it "to maintain and continue a railroad, with a single or double track, *and with such appendages as may be deemed necessary for the convenient use* of the same,"

and the Court held that the company was authorized to acquire land for workshops, etc., and that this power was not exhausted when the road was originally built, and that it had the right to acquire such land as it needed for the accommodation of its business "from time to time". In the case of *Toledo & Wabash R. R. Co.* v. *Daniels et al.,* 16 Ohio, 390, the Court held that, "Under the general corporation act of 1852, * * * a railroad company has power to condemn land for new sidetracks, leading from the main road to its depot building, whenever they become necessary in the proper management and operation of the road." The language of the act referred to was: "Said corporation shall be authorized to construct and maintain a railroad with a single or double track, with such sidetracks, offices and depots as they may deem necessary," etc. In the case of *Lake Shore & M. S. Ry. Co.* v. *Baltimore & Ohio & C. R. Co.,* 37 N. E. Rep., p. 94, the Court said: "The grant of power to locate and construct a railway carries with it the right to construct turnouts, siding and such conveniences as are usual in the necessary operation of the road. The act of 1872, while conferring the power to condemn land for the purposes of such switches, turnouts or sidetracks, and while requiring the persons incorporating the company to name the places from which and to which it is intended to construct the proposed railway, lays down no limitation as to the places where such switches, sidetracks or turnouts are to be constructed." In the case of *Seaboard Air Line R. Co.* v. *Olive,* 55 S. E. Rep. 263, the grant was of a right of way over the land of the grantor, with power to enter upon the same, " 'according to the pleasure of said company,' to lay out, use and occupy such portion of said land contiguous to such railroad as they may deem necessary for sites for their depots, tollhouses, warehouses, engine sheds, workshops, water stations, woodsheds, or other buildings or yards for the necessary accommodation of said company or for the protection of their property"; and the Court adopted the view expressed by CHIEF JUSTICE SHAW in *Brainard* v. *Clapp,* 10 Cush. 6, as follows: "And the Court are also of the opinion

that the right and power of the company to use the land within their limits may not only be exercised originally, when their road is first laid out, but continues to exist afterwards; and if, after they have commenced operations, it is found necessary, in the judgment of the company, to make further uses of the land assigned to them for purposes incident to the safe and beneficial occupation of the road, * * * they have a right to do so to the same extent as when the railroad was originally laid out and constructed."

. In the case at bar we are not dealing with the question of the right of the appellant to acquire, by purchase or otherwise, the necessary land for turnouts and sidetracks, or construing a deed conveying to a railroad company, in general terms, land for its right of way, sidetracks, etc., or determining when a railroad must make use of its land. If the deed in quesiton was for a right of way and such additional land as might be necessary for sidetracks, etc., without any qualifications, there would be some force in the contention of the appellant that it acquired the right to take such land as was, is now and may hereafter become necessary for turnouts and sidetracks in the reasonable and proper management of its road. But such is not the case, for, as we have said, the deed expressly limited the grant for sidetracks, etc., to such sidetracks as were necessary when they and the road were finally located, and the right of the appellant is, therefore, confined to the sidetrack originally constructed.

There are a number of exceptions to evidence offered to show that Mr. Ray intended to convey the right claimed by the appellant, and the condition of the road at the time the appellant acquired control, but as the evidence referred to would not, if admissible, justify a different conclusion than the one we have reached, it is not necessary to consider the exceptions.

But it may be well to add that we are not aware of any principle upon which the conduct or statements of Mr.. Ray at the time of the execution of the deed or subsequent thereto would be admissible to affect the rights of the appellees, who

are strangers to the deed and who purchased the property
upon the faith of the records, and that we do not see how
evidence of the condition of the road when Mr. Phillips
became interested in it in 1902, or of its present condition,
could aid in the construction of the deed.

For the reasons stated the decree of the Court below must
be affirmed.

*Decree affirmed, with costs.*