EASTMAN et al. v. ARMSTRONG–BYRD MUSIC CO.

(Circuit Court of Appeals, Eighth Circuit. February 23, 1914.)

No. 3897.

1. LOTTERIES (§ 3*)—ELEMENTS.
   The three elements of a lottery are: First, prize; second, consideration; and, third, chance.

   [Ed. Note.—For other cases, see Lotteries, Cent. Dig. § 3; Dec. Dig. § 3.*

   For other definitions, see Words and Phrases, vol. 5, pp. 4245–4252; vol. 8, pp. 7710, 7711.]

2. POST OFFICE (§ 34*) — MISUSE OF MAILS — LOTTERY — PIANO ADVERTISING SCHEME—GIFT ENTERPRISE.
   Complainant advertised to give away one piano and to sell two others at what appeared to be less than half their retail value to persons who would solve a 15-square puzzle, declaring in the advertisement that there was positively no lot or chance connected with the solving of the problem, which was a contest of skill, and that the neatest correct solution would be awarded the piano, and the other awards would be distributed in or-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

der of merit. The majority of the answers were filled out on the regular advertisement; some were on separate papers; and a number were unique in design, some being on burnt wood, some in the shape of pillows with the problem worked out in embroidery, etc. The unique designs exceeded the 105 entitled to special awards, and the judges made the special awards all on this class of answers; the first five being given the prizes promised, and each of the next hundred were awarded a voucher good for $117 on the purchase of a piano from complainants before a specified date. To each of the other contestants an award was made of a voucher for $105. *Held*, that such scheme was not a lottery, within Pen. Code, § 213 (Act March 4, 1909, c. 321, 35 Stat. 1129 [U. S. Comp. St. Supp. 1911, p. 1652]), prohibiting the use of the mails in the furtherance of any lottery, gift enterprise, or similar scheme offering prizes dependent in whole or in part on lots or chance, etc.; the term "chance" being construed in connection with the word "lot" and with the words "lottery, gift enterprise, or similar scheme," under the maxim "noscitur a sociis."

[Ed. Note.—For other cases, see Post Office, Cent. Dig. § 54; Dec. Dig. § 34.*

Nonmailable matter, see notes to Southern Ry. Co. v. Shaw, 30 C. C. A. 79; McCarthy v. United States, 110 C. C. A. 548.]

3. POST OFFICE (§ 34*)—MISUSE OF MAILS—FRAUD.

That complainant advertised to give away one piano valued at $350 and to sell other similar pianos at a reduction of $105 and more to persons sending in the neatest correct answers to a 15-square puzzle, and that the pianos so advertised and sold cost complainant at wholesale only $130, so that, if sold at retail for $350, complainant would make a profit of 170 per cent., did not, in the absence of further explanation, show such fraud as would *preclude* complainant from an injunction to restrain the postmaster from excluding complainant's correspondence with persons answering advertisements from the mails.

[Ed. Note.—For other cases, see Post Office, Cent. Dig. § 54; Dec. Dig. § 34.*]

Hook, Circuit Judge, dissenting.

Appeal from the District Court of the United States for the Western District of Oklahoma; John H. Cotteral, Judge.

Suit in equity by the Armstrong-Byrd Music Company, a corporation, against H. G. Eastman, as postmaster of Oklahoma City, Okl., and others. Decree for complainant, and defendants appeal. Affirmed.

Isaac D. Taylor, Asst. U. S. Atty., of Guthrie, Okl. (Homer N. Boardman, U. S. Atty., of Oklahoma City, Okl., on the brief), for appellants.

Frank M. Lowe, of Kansas City, Mo., for appellee.

Before HOOK and SMITH, Circuit Judges, and AMIDON, District Judge.

SMITH, Circuit Judge. This was a suit in equity by the Armstrong-Byrd Music Company, a corporation engaged in the purchase and sale of pianos and other musical instruments at Oklahoma City, Okl., against H. G. Eastman, the postmaster, and John L. Graham, the assistant postmaster, at said city. An injunction was sought and obtained forbidding the defendants from refusing the plaintiff permission to mail certain letters, and defendants appealed.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

It appears that the plaintiff widely distributed the following circular:

## IF YOU CAN SOLVE THIS PROBLEM

As an advertisment we will give these awards absolutely and unconditionally free to persons sending in the NEATEST Correct Solution of the "FIFTEEN PROB-LEM." There is positively no lot or chance connected with the solution of this problem. It is a contest of SKILL. The NEATEST Correct Solution of the problem will be awarded the Piano, and the other awards will be distributed in the order of merit.     :-:          :-:          :-:          :-:          :-:

| FIRST AWARD | | FOURTH AWARD |
|---|---|---|
| A BEAUTIFUL UPRIGHT PIANO Value $350.00 | | A HANDSOME VIOLIN OUTFIT |
| SECOND AWARD | | FIFTH AWARD |
| A $350 UPRIGHT PIANO FOR $125 | | A HANDSOME GUITAR OUTFIT |
| THIRD AWARD | | And One Hundred Additional Awards to the next one hundred neatest correct solutions. Everybody who sends a correct answer will be awarded. |
| A $350 UPRIGHT PIANO FOR $150 | | |

DIRECTIONS:—Take the numbers from 1 to 9 inclusive and place them in the squares so that when added together vertically, horizontally, and diagonally, the total will be "FIFTEEN." No number can be used more than one time. Use this or a separate piece of material or paper. Write your name and address plainly. Only one solution will be received from one family.

Be sure your solution is correct and make it as neat as possible, for much depends on neatness as well as correctness.

The names of the gentlemen who have consented to act as Judges is a guarantee that the awards will be distributed to those who are entitled to them.

In case of a tie, the Judges, being unable to decide between any two solutions, each will receive equal awards.

## DON'T DELAY, Send in Your Answer Quick, You May Get the Beautiful Piano!

All answers must be in our store on or before Thursday, May 9th, 1912.

BRING OR MAIL YOUR SOLUTION TO

## ARMSTRONG-BYRD MUSIC CO.    211 WEST MAIN STREET OKLAHOMA CITY, OKLA.

It appears that the H. P. Nelson Company, of Chicago, was aiding in this project, and one of its employés, L. M. Chaney, was in actual charge of it and wrote this advertisement. When the time for filing answers had expired, and on or about May 10, 1912, the judges selected to determine the contest met to determine who had furnished the neatest correct solution. These judges consisted of the presidents of two banks and the vice president of a third, all of Oklahoma City. When they assembled, there were about 6,500 answers. Of these the vast majority were filled out on the original advertisement. Some were on separate papers; but a number were very unique in design. Some

were on burnt wood, some in the shape of pillows with the problem worked out in embroidery, and the like. These unique designs exceeded the 105 entitled to special awards, and the judges made the special awards all on this class of answers. The first five were awarded the prizes promised. To each of the next hundred was awarded a voucher in the form of a draft by the H. P. Nelson Company, of Chicago, to Armstrong-Byrd Music Company, for $117, good only on the purchase price of a new piano until May 25, 1912, and to each of the other contestants a similar award was made of a voucher for $105. The Armstrong-Byrd Company then desired to mail to each of the contestants notice of the result, but the assistant postmaster, John L. Graham, under instructions from the postmaster, H. G. Eastman, refused to permit the mailing of said letters upon the ground that the entire plan rendered the scheme a lottery and gift enterprise based upon chance or lot under the Criminal Code, § 213, and section 499 of the Postal Laws and Regulations of 1902, as amended.

It appears that, after the adoption of the Penal Code, section 499 of the Postal Laws and Regulations was so amended as to correspond with section 213 of the Penal Code, which is as follows:

"Sec. 213. No letter, package, postal card, or circular concerning any lottery, gift enterprise, or similar scheme offering prizes dependent in whole or in part upon lot or chance; and no lottery ticket or part thereof, or paper, certificate, or instrument purporting to be or to represent a ticket, chance, share, or interest in or dependent upon the event of a lottery, gift enterprise, or similar scheme offering prizes dependent in whole or in part upon lot or chance; and no check, draft, bill, money, postal note, or money order, for the purchase of any ticket or part thereof, or of any share or chance in any such lottery, gift enterprise, or scheme; and no newspaper, circular, pamphlet, or publication of any kind containing any advertisement of any lottery, gift enterprise, or scheme of any kind offering prizes dependent in whole or in part upon lot or chance, or containing any list of the prizes drawn or awarded by means of any such lottery, gift enterprise, or scheme, whether said list contains any part or all of such prizes, shall be deposited in or carried by the mails of the United States, or be delivered by any postmaster or letter carrier. Whoever shall knowingly deposit or cause to be deposited, or shall knowingly send or cause to be sent, anything to be conveyed or delivered by mail in violation of the provisions of this section, or shall knowingly deliver or cause to be delivered by mail anything herein forbidden to be carried by mail, shall be fined not more than one thousand dollars, or imprisoned not more than two years, or both; and for any subsequent offense shall be imprisoned not more than five years. Any person violating any provision of this section may be tried and punished either in the district in which the unlawful matter or publication was mailed, or to which it was carried by mail for delivery according to the direction thereon, or in which it was caused to be delivered by mail to the person to whom it was addressed."

[1] It is agreed by the parties that the three elements of a lottery are: First, prize; second, consideration; and, third, chance—and it is conceded by the plaintiff that the first two elements were present. It is, of course, conceded that these prizes were not to be awarded upon lot, but it is claimed that they were to be awarded upon chance, and the sole question arising on the issues is whether there was such an element of it here as to make the scheme a lottery. It must be borne in mind that this law like other laws must be construed in the light of

reason. Standard Oil Co. v. United States, 221 U. S. 1, 31 Sup. Ct. 502, 55 L. Ed. 619, 34 L. R. A. (N. S.) 834, Ann. Cas. 1912D, 734; United States v. American Tobacco Co., 221 U. S. 106, 31 Sup. Ct. 632, 55 L. Ed. 663.

Attention is called by the defendant to the fact that section 213 of the Penal Code provides that there shall be excluded from the mails any letter, package, postal card, or circular, concerning any lottery, gift enterprise, or similar scheme offering prizes dependent in whole or in part upon lot or chance.

While it is true that, if the scheme be a lottery, gift enterprise, or similar scheme, it is not necessary that it shall be determined wholly by chance, but if it rests upon a determination in whole or in part by chance it is sufficient, yet it must be first a lottery, gift enterprise, or similar scheme, and even then the word "chance" is not used in its broadest signification. Originally there was considerable controversy as to the legality of life insurance policies because the ability to mature them was dependent upon the number of lapses, and it was contended that, as the number who would thus lapse was a matter wholly of chance, the policies were invalid, but it has uniformly been held otherwise. So the giving of trading stamps, so called, is not a lottery, although the system is dependent on how much the purchaser buys at some future time as to what article he can obtain from a trading company. State v. Caspare, 115 Md. 7, 80 Atl. 606; State v. Felzer, 115 Md. 7, 80 Atl. 614; City and County of Denver v. Frueauff, 39 Colo. 20, 88 Pac. 389, 7 L. R. A. (N. S.) 1131, 12 Ann. Cas. 521; State v. Shugart, 138 Ala. 86, 35 South. 28, 100 Am. St. Rep. 17; Ex parte Drexel, Ex parte Holland, 147 Cal. 763, 82 Pac. 429, 2 L. R. A. (N. S.) 588, 3 Ann. Cas. 878; Ex parte West, 147 Cal. 774, 82 Pac. 434; State v. Dalton, 22 R. I. 77, 46 Atl. 234, 48 L. R. A. 775, 84 Am. St. Rep. 818; Young v. Commonwealth, 101 Va. 853, 45 S. E. 327; People v. Gillson, 109 N. Y. 389, 17 N. E. 343, 4 Am. St. Rep. 465.

In McDonald v. Pacific Debenture Co., 146 Cal. 667, 80 Pac. 1090, it was held that, where the defendant promised to pay certain debentures in accordance with a given table, the plan had no such element of chance or hazzard as to make it a lottery.

In Lauder v. Peoria Agricultural & Trotting Society, 71 Ill. App. 475, it was held that, where the lots in a subdivision were of equal value, one who bought a lot not described, but the exact lot was to be determined by a citizens' committee on fair grounds, the purchaser was bound by the contract.

In People v. Fallon, 152 N. Y. 12, 46 N. E. 296, 37 L. R. A. 227, 57 Am. St. Rep. 492, it was held that where parties paid an entrance fee for their horses in a race, and the association from its own funds offered a prize, this was not a lottery. See Delier v. Plymouth County Agricultural Society, 57 Iowa, 481, 10 N. W. 872.

In Quatsoe v. Eggleston, 42 Or. 315, 71 Pac. 66, where, for the purpose of advertising a certain piano, the plaintiff agreed to furnish 3 of the instruments and 5,000 tickets, one to be given with each 25-cent purchase, each holder to have one vote for each 25-cent ticket thus issued to him for a society, church, school, lodge, or person, and the

3 pianos to go to the 3 receiving the highest number of votes, it was held there was no element of chance. The court said:

"The awarding of the pianos, which are proposed to be given away as an advertisement, is not made by chance or lot, but by the affirmative, conscious act and will of the holders of tickets obtained with goods purchased at the defendant's store."

[2] It thus appears that it is not every conceivable chance which makes a transaction illegal, and that the word "chance," as used in the statute, must be construed in connection with the word "lot" and with the words "lottery, gift enterprise, or similar scheme." The maxim "noscitur à sociis" applies, and the meaning of the word "chance" is to be known or explained by its associates. As so construed, there was no element of chance in this scheme or plan. When the judges assembled, the plaintiff gave them a copy of the advertisement and, without any admonition as to how it should be construed, told them to award the prizes in accordance with its terms. The fact, if it be a fact, that the judges misapprehended the technical meaning of the word "neatness" would not convert into a lottery that which had no resemblance to a lottery.

In our opinion the postmaster was erroneously advised that this enterprise was a lottery, and none of the authorities cited by the attorneys for the appellant, chiefly Public Clearing House v. Coyne, 194 U. S. 497, 24 Sup. Ct. 789, 48 L. Ed. 1092, Brooklyn Daily Eagle v. Voorhies (C. C.) 181 Fed. 579, State v. Shorts, 32 N. J. Law, 398, 90 Am. Dec. 668, People v. Lavin, 179 N. Y. 164, 71 N. E. 753, 66 L. R. A. 601, 1 Ann. Cas. 165, and Stevens v. Cincinnati Times-Star Co., 72 Ohio St. 112, 73 N. E. 1058, 106 Am. St. Rep. 586, seem to us to have any weight to the contrary, and the cases cited in the supplement to the brief by Judge Goodwin do not seem in point.

[3] It is contended, however, that outside of the lottery features the transaction was such an illegitimate business enterprise or so tainted with fraud that the matter tendered for mailing in connection therewith should be excluded from the mails upon that ground. It is true that the record apparently shows that pianos at retail are sold at a very large profit. The piano given as the first prize at $350 cost at wholesale $130, so that, if it was sold at retail at $350, it was sold at 170 per cent. profit; but it appears in the testimony of Mr. Armstrong that pianos are usually sold at a profit of about 133 per cent. It further appears that the H. P. Nelson Company, which was conducting the enterprise, sold their $350 pianos to the plaintiff at $125, thus allowing 180 per cent. profit. It nowhere appears that these profits were in excess of ordinary retail piano dealers' profits. L. M. Chaney, who was the only witness examined on the subject, swears that the prices charged by the plaintiff were about $50 to $70 apiece less than charged by other houses. Enormous as these profits seem, without further explanation, we do not see why the plaintiff's mail should be excluded without excluding the mail of all houses in the United States dealing at retail in pianos. It affirmatively appears that the vouchers given would so reduce the price of a $225 piano that it would sell at slightly less than cost.

Suffice it to say that the defense that this business was fraudulent is not pleaded, and while freely conceding that, if it conclusively appeared that it was fraudulent, we could not approve the granting of an injunction in furtherance of it, even though the defense was not pleaded, no such showing is made here as to justify the refusal to mail the plaintiff's letters, and much less to justify the refusal to mail them upon the ground that they pertain to a lottery.

In United States v. Samuel E. Moist, 231 U. S. 701, 34 Sup. Ct. 255, 58 L. Ed. ——, decided on January 5, 1914, some of the questions here involved were sought to be presented to the Supreme Court, but for the reasons there indicated that court failed to pass upon them.

The decree of the District Court is affirmed.

HOOK, Circuit Judge (dissenting). Though the music company may not have been conducting a lottery or gift enterprise, still, if its scheme was clearly fraudulent, the postal authorities were right in denying the use of the mails, though the wrong reason was given at the time. I think it obvious that deception was at the foundation of the scheme, and that it was designed and well calculated to induce general correspondence and an expenditure of time and labor without the compensation or "reward" that would be expected from the wording of the advertisement. Such things are to be judged by their natural effect upon those whose reliance and action are invited, especially when that effect is designed; and we are not called upon to follow the authors into a nice construction of a shrewd arrangement of words. For example, a promise of a fine engraving of Washington may not be made good by a two-cent postage stamp. Here it was said: "Everybody will be rewarded." More than 6,000 persons responded, and, when the time of fulfillment came, the rewards beyond the first 105 were so conditioned as to be practically worthless. There was more than a lack of ethics; there was a defrauding.

"As is manifest, people were to be led into the dealing by the delusive apparatus of a promise known to be false when made." United States v. Moist.

The expense, time, and labor of each, though relatively small, are enough for the law to notice.