### SOLICITATION OF BUISNESS BY A SCHEME OF CHANCE.

Municipal Court of Cincinnati.

THE STATE OF OHIO v. WILLIAM BADER, DALE RIPFN AND
ISIDORE SCHIFRIN, AND

CITY OF CINCINNATI v. WILLIAM BADER, DALE RIPEN AND
ISIDORE SCHIFRIN.

Decided, April 10, 1922.

*Lottery—Free Tickets for a Drawing for an Automobile—Distributed
to Patrons of a Restaurant for the Purpose of Increasing the Busi-
ness—Held to be a Scheme of Chance.*

"A scheme, whereby an automobile worth approximately $1,300 is given
away, by means of a drawing of tickets, which are given to
purchasers of meals at a restaurant, as well as to a few others who
come in without purchasing meals, said tiickets being in two
parts, each part bearing the same serial number, one part of said
ticket being dropped by the recipient into a barrel placed at the
front of the restaurant for that purpose, and the other part retained
by the holder thereof, which scheme and drawing were advertised
by the owners of the restaurant both by a display of the automobile
placed in their show window and was also advertised in the daily
press, and a card inviting persons to come in and get tickets,
which scheme and drawing are admitted to be an inducement for
people to patronize the restaurant, is a lottery, and in violation of
the provisions of Section 13063 of the General Code of Ohio.

*Saul Zielonka,* City Solicitor, *Chauncey D. Pichel* and *J. H.
O'Connell,* Municipal Court Prosecutors, for the City of Cin-
cinnati and State of Ohio.

*Joseph W. Heintzman* for the defendants.

*Kramer & Bettman, Lawrence H. Steltenpohl, Amici Curiae,*

EYRICH, J.

The defendant, William Bader, operated a cafeteria in which
he testified had been invested a quarter of a million dollars.
In the daily press he advertised the "gift" of an automobile
and urged persons to obtain tickets. In the show window of
his restaurant he placed on display a new automobile of popu-
lar make worth approximately $1,300 and at its side displayed

a large card stating that the automobile was to be given away free and urging persons to come in and get tickets.

The testimony showed that the usual and ordinary procedure was to place the tickets on the tray with the meals served, or to give them to the patron with his check.   In rare instances a ticket was handed to a curious person who came into the restaurant and did not purchase a meal, but to obtain the ticket that person was compelled to walk seventy-six feet from the entrance of the cafeteria, and as the defendant William Bader testified could not help but see the service and food offered for sale.   The so-called giving away of the ticket with the meals was the exception.

The defendants William Bader and Isadore Schifrin both testified that the distribution of tickets with meals and to persons who entered and did not buy meals was an inducement for them to view the premises.

Each of these tickets bore a distinctive number and advertised the "gift" of the automobile and also advertised the restaurant.   The ticket was in two parts, each part bearing the same serial number.   Before leaving the restaurant the recipient wrote his name on one part of the ticket and dropped it into barrels provided for that purpose and retained the other half of said ticket.

On March 19, 1922 in the presence of about one thousand persons in the Grand Opera House of Cincinnati, Ohio, a public drawing was had, blindfolded children assisting in the drawing of the winning ticket and the choice therefore of the winner was left entirely to chance.

These prosecutions were brought under Section 13063 of the General Code of Ohio and Section 909-1 and Section 909-3 of the Code of Ordinances of the city of Cincinnati, the latter denouncing as a misdemanor the possession of lottery tickets.

Section 13063 of the General Code of Ohio provides as follows:

"Whoever vends, sells, barters or disposes of a ticket, order or device for or representing a number of shares or an interest in a lottery, "policy" or scheme of chance, by whatever name, style or title denominated or known, whether located or to be drawn, paid or carried on within or without this state, shall be

fined not more than five hundred dollars or imprisoned **not more** than six months, or both." (R. S. Sec. 6930.)

Ordinance 909-1 of the Code of Ordinances of the city of Cincinnati provided as follows:

"It shall be unlawful for any person knowingly to have in his possession, or in his custody, or in his control, any writing, paper or document, representing or being a record of any chance, share or interest in numbers, sold, drawn or to be drawn in any lottery, "policy," or any other lottery by whatsoever name known; or any paper, print, writing, or policy slip, device or article of any kind, such as is commonly used in carrying on, promoting or playing lottery; "policy," "policy," or any other lottery by whatsoever name known."

Ordinance 909-3 is a section fixing the penalty.

The question to be decided is whether the term lottery as used in the above sections of the General Code of Ohio and the ordinance of the city of Cincinnati embraces the distribution by lot of a prize among the holders of tickets some of whom received their tickets contemporaneously with purchases made by them and without additional charge, from, and in the place of business of the persons making the distribution, and a very small minority of whom received their tickets without any charge in the place of business of, but without making purchases from the persons making the distribution.

The court has had the advantage of well considered briefs from counsel on both sides in this case and appreciates the light thrown on this question by the *amici curiae*.

In order to find the defendants guilty under the Sections of the statute and ordinances aforesaid the State must prove that the defendants operated or were connected with a lottery, which prompts the question "What is a lottery?"

A common definition of a lottery which has been quoted a number of times with approval is—

"A scheme for the distribution of prizes by lot or chance" or "A scheme by which a result is reached, by some action or means taken and in which result man's choice or will has no part, nor can a man's reason, foresight, sagacity, or design

enable him to know or determine such result until the same has been accomplished"
or

"A scheme for the distribution of property by chance, among persons who have paid or agreed to pay a valuable consideration for the chance, whether called a lottery, raffle or 'gift enterprise' or by some other name."

By referring to Ruling Case Law, Volume 17, at page 1211, it will be found that a "gift enterprise" has been defined as "a scheme for the division or distribution of certain articles of property, to be determined by chance among those who have taken shares in the scheme or as a sporting article by which, for example, a merchant or tradesman sells his ware for the market value, but by way of inducement gives to each purchaser a ticket which entitles him to a chance to win certain prizes, to be determined after the manner of a lottery." "It has been further declared that the words 'gift enterprise' have attained such notoriety that the court will take judicial notice of what is meant thereby." Furthermore, it will apppear that all "gift enterprises" which come within the meaning of the two foregoing descriptions are lotteries.

There is no doubt in the opinion of the court that the three essential elements of a lottery are first "prize", second "chance", third "consideration". *Eastman* vs. *Armstrong. Byrd Music Co.,* 212 Fed. 662; *Equitable Loan Co.* vs. *Watering,* 117 Ga., 599.

Inasmuch as the defendants at the trial, admitted the facts as set out in the "statement of facts" herein, there is no question but that the first two elements, to-wit: "prize" and "chance" are found in the case at bar. The question therefore before the court is whether there was a consideration moving from the recipient of a ticket to the defendants, and if so whether that consideration is sufficient to support the contract.

It has been well said that,

"The consideration for a contract is the price, motive or inducement to make the promise upon which the suit is brought."

In the case of *Yellowstone Kit* vs. *State,* 88 Ala. page 196, cited so often by counsel for the defendants, it will be found

that lotteries intended to be prohibited "embrace only schemes in which a valuable consideration of some kind is paid, directly or *indirectly* for the chance to draw a prize," and further, "If the distribution is a pure gift or bounty, *and not in name or pretense merely, which is designated to evade the law*" then such would not be a lottery.

In the case of *Bell* vs. *State,* 5 Sneeds Rep. 37 Tenn. Rep. page 508, the court held that the sale of books at their market price, with the offer to the purchaser of each book a prize to be drawn was gaming and added that "all these artifices to evade and cheat the law and entrap the unwary are but aggravations of the offense.'

In the case of *Hudelson et al.,* vs. *State,* 94 Ind. Rep. 426, the court there held that the purpose of the gift was the drawing of visitors and patrons and that it made no difference that the ticket was to be procured by the purchase of goods, the transaction remained a lottery.

In the case of *Brooklyn Daily Eagle, etc.,* 181 Fed. Rep. at page 581, the Court held:

"It has been held in numerous cases  \*  \*  \*  that the three necessary elements of a lottery are the furnishing of a consideration, the offering of a prize, and the distribution of the prize by chance rather than entirely upon a basis of merit. The *question of consideration does not mean that pay shall be di-directly given for the right to compete. It is only necessary that the person entering the competition shall do something or give up some right or acquisition, a sending in of labels is sufficient to comply with that requirement. Nor does the benefit to the person offering the prize need to be directly dependent upon the furnishing of a consideration. Advertising and the sales resulting thereby, based upon a desire to get something for nothing, are amply sufficient as a motive.*"

In the case of *Equitable Loan & Security Company et al* v. *Waring et al,* 117 Ga., 599, at page 609, the court holds:

"A consideration of various definitions of the word 'lottery', and of numerous decisions, indicated that three elements enter into such a scheme; and that if they exist, it is a lottery or 'similar scheme or device,' condemned by laws against lottery no *matter what may be the particular form of words or cloak of*

*phrase in which it may conceal itself.* These elements are: (1) A consideration. (2) Chance. (3) A prize.

(1) *The consideration need not be great. It may be money or other things of value. Sometimes the attracting of custom to one's business, or other benefit to the person conducting the scheme is held to be sufficient, and where money is paid directly for the ticket, lot or chance.*

Counsel for the defendants cite several cases involving the giving away of trading stamps by merchants, to purchasers of goods in which cases the courts rightly held that "the great law of competition invites and promotes this sort of advertisement."

Those cases and the instant cases are not parallel in the opinion of the court, for the element of chance is entirely missing in the former, inasmuch as the trading stamps have a definite value and the recipient thereof is certain to receive something for them.

It is the element of chance and the resultant encouragement of the gambling spirit which the law endeavors to guard against.

In the case of *Stevens* v. *Times Star,* 72 O. S., p. 112, the court said:

"All highly civilized peoples recognize the evils to society rising from the encouragement of the gambling spirit, and it is for the purpose of discouraging this vice and preventing the spread of it that laws are passed in other states like the Ohio statutes to punish and prohibit. Such laws are and should be interpreted and enforced by our courts in a way calculated to secure the object sought."

In the case at bar, the defendants testified that the tickets were given away as an inducement to people to come into their place and as an advertising medium. That the "award" as they termed it might be given the complexion of legitimacy, they said that tickets were given to all who came in and even, as in one instance to a friend to distribute one hundred of these tickets to his acquaintances.

Many and varied are the schemes by which the circumvention of the lottery law is attempted and that in the instant case is one of the many. The defendants knew what a lottery was, for their very method in endeavoring to have this one lack the

essential element of ''consideration,'' while retaining those of ''prize'' and ''chance,'' proves the exacting care with which they examined the law and its requirements. If, as counsel for the defendant contend, that there was no consideration moving from the recipient of a ticket to the defendants, why the hold ing of the award at all? Surely the defendants must be given credit for possessing good business acumen, and that does not presuppose the investment of a quarter of a million dollars and in addition thereto the giving away of from one thousand to thirteen hundred dollars without the expectation of a return.

Stripped of all the disguises and fictions that surround it, this scheme conducted by the defendant William Bader develops to be a well planned lottery, often called a ''gift enterprise.'' The claim that the tickets are given away free was a mere ''smoke screen'' to conceal the real character of the undertaking. The tickets are not free in the sense of being given without consideration. To obtain them in the ordinary course a person was compelled to purchase a meal. A very few were compelled to walk seventy-six feet through the restaurant to get them.

The defendant, William Bader, obtained a large return from this lottery; as he himself admitted. His business was benefited greatly by its operation.

The real injury to the people of the state of Ohio in the operation of such lotteries is the incitement offered to arouse the gambling spirit. Persons believed they were going to get ''something'' for ''nothing.'' This is the evil in all schemes of chance, no matter under what novel or devious methods they are conducted.

The cupidity of people is aroused and they all rush to obtain a chance on an article worth perhaps more than a thousand times that which they venture.

The Legislature has announced the public policy of the state and the courts have upheld it: *Stevens* v. *Times Star*, 72 O. S., page 112.

Therefore the court finds the defendant William A. Bader and Isadore Schifrin guilty of violating Section 13063 of the General Code of Ohio on affidavit 6452 and guilty of unlawfully possessing lottery tickets on affidavit 6453.